■ JOHN K. ABELY, Appellant-Respondent, v RICHARD M. HAYDEN et al., Respondents, and CLAIRE F. O'BRIEN, Respondent-Appellant.—Order of the Supreme Court, New York County (Andrew R. Tyler, J.), entered March 31, 1988, which, *inter alia,* denied plaintiff's motion and defendant O'Brien's cross motion for summary judgment, unanimously modified, on the law, to grant plaintiff summary judgment on the first cause of action in the amount of $59,000 with interest from July 23, 1987, to grant defendant O'Brien summary judgment dismissing the third cause of action, and, upon a search of the record, to dismiss the remainder of the complaint, and is otherwise affirmed, with costs to defendant O'Brien only.

Plaintiff buyer and defendant seller entered into a contract for the sale of a cooperative apartment, plaintiff making a down payment of $59,000, 10% of the purchase price, to be held by defendant's attorneys in an interest-bearing escrow account pending the closing. Under paragraph 6, the contract was subject to the approval of the co-op's board of directors and was to be deemed canceled if such approval was refused. The board refused to approve the contract when plaintiff refused its request that he supply it with copies of his last two Federal tax returns. Defendant notified plaintiff that such refusal to comply with the board's request for his tax returns was a breach of the contract entitling defendant to retain the $59,000 down payment as liquidated damages; plaintiff responded that under paragraph 6 he was expressly relieved of any obligation he might otherwise have had to so supply the board with tax returns, and sued for return of the down payment or, in the alternative, specific performance. In addition, in a third cause of action, plaintiff sought to hold defendant's attorney in the transaction liable for fraud or

negligent misrepresentations for having falsely told him that she herself had been told by the co-op's managing agent that a net worth statement, which plaintiff did submit, would be acceptable to the board in lieu of tax returns.

As it originally read in the printed form used by the parties, paragraph 6 of the contract required the purchaser to submit to the board "the names and addresses of persons to whom or banks or corporations to which reference may be had as to Purchaser's character and financial standing, and thereafter to attend [and to cause Purchaser's spouse to attend] one or more personal interviews, as requested by the Corporation, and submit to the Corporation or its managing agent such further references and information as are commonly asked for in such transactions." (Underscoring added.) This language was changed by crossing out the part underscored and substituting therefor the following typewritten language: "Purchase application attached hereto and all documents required thereunder". Attached to the contract was a separate, printed form denominated a "Purchase Application", on top of which was a typewritten page bearing the caption "To Be Submitted With Purchase Application" and specifying "Three business references", "Three personal references", and a "Net worth statement, signed by an accountant or, previous two years federal tax returns, complete with schedules" (underscoring in original).

As it originally read, we think paragraph 6 left plaintiff free to decide what information to supply the board in the first instance with his application, but required him "thereafter" to supply such additional information as might be asked for by the board and is common in this type of transaction. (It is a fact adequately established by the record that co-op boards commonly ask for an outside purchaser's recent tax returns.) As altered, we think paragraph 6 constrained plaintiff to supply the board, in the first instance, with three personal references, three business references, and either a net worth statement or his last two tax returns, but relieved him from having to supply "thereafter" a fourth personal reference, a fourth business reference, a net worth statement in the event he chose to supply tax returns, or tax returns in the event he chose to supply a net worth statement. Apparently uncertain as to what and how much information the board would be asking for, the parties negotiated what can only be understood as a limitation on the information plaintiff would have to supply.

Defendant argues that to construe paragraph 6 in this way would be to read out of it the unexcised printed portion requiring plaintiff to supply, in addition to the references and information specified in the typewritten addendum, "such further references and information as are commonly asked for in such transactions." Perhaps so. But to construe paragraph 6 in the manner urged by defendant would be to leave plaintiff as susceptible to information requests by the board as he would have been had that paragraph not been altered, rendering meaningless the choice seemingly given him in the typewritten portion of submitting to the board a net worth statement instead of tax returns. As plaintiff aptly puts it, the printed portion of the contract should not be construed to take away what the typewritten portion gave *(Matter of Cale Dev. Co. v Conciliation & Appeals Bd.,* 94 AD2d 229, 234, *affd* 61 NY2d 976).

We dismiss the second cause of action for specific performance, plaintiff having elected to cancel the contract instead. The third cause of action against defendant's attorney is so lacking in merit that plaintiff does not even respond to the brief filed on the attorney's cross appeal from the denial of her cross motion for summary judgment. In granting plaintiff summary judgment on the first cause of action for return of the $59,000 down payment, we deny him the interest that has accrued thereon in the escrow account, and reimbursement of the expenses he incurred for a title examination ($285) and accounting services ($1,100) since, under paragraph 6, in the event of cancellation for nonapproval by the board, the down payment was to be returned "without interest to Purchaser" and both parties were to be "relieved from all further liability". We grant legal interest from July 23, 1987, the commencement of the action, there being nothing in the record to indicate that plaintiff made an earlier formal demand for return of the down payment. Concur—Murphy, P. J., Kupferman, Kassal, Wallach and Smith, JJ.