■ EIGHT HUNDRED CORP., Appellant, v 217 STATE STREET REALTY CORP., Respondent. (Action No. 1.) BERKSHIRE INVESTMENTS, INC., Appellant, v 217 STATE STREET REALTY CORP., Respondent. (Action No. 2.)—In consolidated actions for specific performance of a contract for the sale of real property, the plaintiffs separately appeal from so much of a resettled judgment of the Supreme Court, Kings County (Rader, J.H.O.), dated October 30, 1989, as dismissed their complaints and canceled their notices of pendency.

Ordered that the resettled judgment is affirmed insofar as appealed from, with one bill of costs.

On July 11, 1985, the defendant 217 State Street Realty Corp. (hereinafter State Street) entered into a contract to sell real property located in Brooklyn to 63 Associates, Inc., (hereinafter 63 Associates) for $1,500,000, $75,000 of which was to be held in escrow by State Street's agent until the closing. Under the terms of the contract, 63 Associates had the right, until the end of business on July 29, 1985, to terminate the contract and receive a return of its down payment if it found

that the premises to be conveyed did not leave it with a minimum of 15,000 square feet of "developable land".

By letter dated July 29, 1985, the attorney for 63 Associates, Irwin Reicher, notified State Street that his client had determined that the premises to be conveyed would, in fact, leave it with less than a minimum of 15,000 square feet of "developable land", and thus was electing to terminate the contract and was requesting the return of its down payment. In response, State Street indicated that it considered the actions of 63 Associates to constitute a breach, and requested the computations upon which 63 Associates relied. At the end of August 1985 Reicher reiterated the position of 63 Associates that it was not breaching the contract, but was merely exercising its right to cancel it. On September 3, 1985, State Street confirmed its position that it considered the contract breached unless 63 Associates provided it with the facts upon which it relied in determining the "developable" area of the property. However, approximately nine days later, State Street's representative informed 63 Associates that, after consultation with its shareholders, State Street had decided to accept the decision of 63 Associates to terminate the contract. The deposit, plus interest, was thereafter returned to 63 Associates on September 16, 1985. On September 24, 1985, Reicher acknowledged receipt of the deposit and indicated that he was "awaiting" his client's "instructions".

Meanwhile, unbeknownst to State Street, on September 11, 1985, 63 Associates had entered into an "Agreement" with the plaintiff in action No. 1, Eight Hundred Corp. (hereinafter Eight Hundred), whereby the former purported to assign to the latter "all of Assignor's right, title and interest in and to" the contract of sale. State Street was apprised of this fact in late September. On October 11, 1985, Reicher sent State Street's representative a check for $75,000, which was accompanied by a letter wherein it was stated that, pursuant to the terms of the contract of sale, the additional deposit was intended to extend the closing date to January 14, 1986. This check was immediately returned by State Street with a letter reiterating its understanding that the contract had been canceled. Two weeks later, Reicher returned both the check for $75,000 plus interest, which it had received from State Street and which represented the return of the original down payment, and the October 11 check for $75,000 to State Street, with a letter stating that it had verified that the "developable" area was, in fact, 15,000 square feet, and that, therefore, "under the terms of the contract we have no right to back

out". This attempt to revive the contract was rejected by State Street, and the two checks were sent back to Reicher. On November 20, 1985, 63 Associates assigned "whatever right, title and interest it has in" the contract of sale to Berkshire Investments, Inc. (hereinafter Berkshire), the plaintiff in action No. 2.

Shortly thereafter, Eight Hundred and Berkshire each commenced separate actions against State Street for specific performance. These actions were subsequently jointly tried before Judicial Hearing Officer Irving Rader. At the conclusion of the trial, the Judicial Hearing Officer found that 63 Associates had anticipatorily breached the contract of sale by purporting to terminate the same when, in fact, the developable area of the property in question was not less than 15,000 square feet. The Hearing Officer additionally found that the purported assignment from 63 Associates to Eight Hundred was actually only an agreement to assign and was, therefore, unenforceable. Thus, the Hearing Officer granted State Street's motions to dismiss the complaints, and awarded Berkshire the $75,000 deposit plus interest, which apparently was still being held by State Street. Eight Hundred and Berkshire now appeal, and we affirm.

The letter dated July 29, 1985, from 63 Associates constituted a repudiation of the contract of sale. Moreover, although State Street initially refused to accept the repudiation of the contract by 63 Associates and indicated that it would consider 63 Associates to be in breach if the closing did not take place, it ultimately did accept it and returned the down payment. This acceptance came well before 63 Associates acknowledged that its election to terminate the contract was unjustified. In effect, when State Street accepted the offer of 63 Associates, the parties to the contract of sale agreed to its cancellation. Therefore, neither 63 Associates nor its assignees had the right to subsequently require State Street to perform its obligations under the contract (see, Tenavision, Inc. v Neuman, 45 NY2d 145, 150; Blumenthal & Co. v Gallert & Co., 240 NY 217, 221-222), and the complaints were properly dismissed. Brown, J. P., Harwood, Miller and Ritter, JJ., concur.