■ JERICHO GROUP, LTD., Respondent, v MIDTOWN DEVELOPMENT, L.P., Appellant. [820 NYS2d 241]—

Order, Supreme Court, New York County (Charles Edward Ramos, J.), entered May 18, 2005, which denied defendant's CPLR 3211 (a) (7) motion to dismiss the amended complaint, unanimously reversed, on the law, with costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

On June 18, 2002, Jericho Group, Ltd. entered into a contract to purchase two undeveloped properties on 11th Avenue from Midtown Development, L.P. One lot was located between 36th and 37th streets, and the other was between 37th and 38th streets. The purchase price was $28 million. Jericho deposited $250,000 into an escrow account at the time of execution of the contract, and agreed to pay the balance of the purchase price at closing. Paragraph 41 (d) of the contract provided that Midtown's counsel would serve as the escrow agent. Paragraph 22 of the contract provided: "In the event that the seller is unable to convey title in accordance with the terms of this contract, the sole liability of the seller will be to refund to the purchaser the amount paid on account of the purchase price, and upon such

refund any payment being made [under] this cont[r]act shall be considered canceled." Both of the properties were encumbered by railroad easements and rights of way in favor of Amtrak. A rider to the sales contract provided: "29. (a) [Jericho] shall have seventy five days from the date this Contract has been executed by both parties ('the Study Period'), to cause to be performed, at Purchaser's cost and expense, such environmental and/or architectural/engineering and other tests and/or inspections as [Jericho], in its sole discretion, shall elect to perform. In accordance with the terms of Paragraph 29 (b) below, [Midtown] shall allow Jericho and its representatives access to [the] Property at all reasonable times, shall cooperate with [Jericho] and its representatives and shall make available to [Jericho] and its representatives such material pertinent to such tests and/or inspections as seller may have in it[s] possession. If, prior to the conclusion of the Study Period, [Jericho] shall determine, in its sole and absolute discretion that the Property is not suitable for its needs, [Jericho] shall have the right to cancel this Contract upon written notice to Seller and Escrowee. Upon timely receipt of such notice of cancellation, the Escrowee shall promptly return to [Jericho] the monies paid in execution hereof." The closing was scheduled for 15 days after the 75-day study period, on September 18, 2002. The rider also provided, at paragraph 29 (c) that if Jericho made a "reasonable request," Midtown was to provide Jericho with "documents . . . relating to the condition of the property during the study period."

In July 2002, Jericho requested an extension of the study period from September 2, 2002 to December 31, 2002. Midtown sent Jericho a letter, dated July 15, 2002, stating that it was "not particularly amenable to Jericho's request, particularly because Midtown refrained from making any representations concerning zoning or permits in the Contract." However, it offered to grant the requested extension on the conditions that Jericho: (1) paid a nonrefundable fee of $250,000 for the carrying of the sites; (2) placed an additional $500,000 in escrow for the down payment; and (3) agreed that $250,000 of the down payment would be nonrefundable in the event Jericho failed to close under the contract. The letter then states, "[a]ssuming Jericho accepts this proposal, we would present it as an amendment to the Contract, which would be signed by both parties."

Jericho did not agree to these terms, and on July 17, 2002 counterproposed that the contract be amended to extend the study period until July 1, 2003. As part of the counterproposal, Jericho agreed to deposit an additional $500,000 in escrow to be used to fund certain real estate taxes on the property. By letter

dated July 25, 2002, Midtown rejected the counterproposal, but stated that it was still willing to extend the study period through December 31, 2002 in accordance with its earlier proposed terms. Jericho rejected this offer and made a second counterproposal. It requested that it be granted a free extension of the study period through December 31, 2002, and on that date it would have the option to further extend the study period to July 31, 2003 by paying Midtown $1 million. Midtown rejected this second counterproposal. Jericho made a third proposal that the study period be extended to July 1, 2003, this time contingent upon its payment of a nonrefundable payment of $750,000, which was also rejected.

Finally, on August 28, 2002, approximately a week before the end of the study period, Jericho sent a letter to Midtown, which stated: "Without prejudice to its current rights under the referenced contract, Jericho has determined to accept the proposal of Midtown regarding the extension of the study period as set forth in [Midtown's] letter dated July 15, 2002, and as reiterated in [their] letter dated July 27, 2002. Please prepare a draft of an appropriate amendment to the referenced contract and forward it to me . . . as soon as possible so that we can finalize the matter prior [sic] well before the current expiration of the study period." On August 28, 2002, Midtown faxed a letter which notified Jericho that its July 15, 2002 offer had been repeatedly rejected and was deemed, as rejected, null and void.

On August 30, 2002, Jericho informed Midtown that it had heard something about an oil spill at or near the property. It requested that Midtown inform it about the alleged oil spill and whether or not it had been cleaned up. This was not the first correspondence between the parties on this subject. By e-mail dated August 23, 2002, Midtown let Jericho know that it had no information concerning the cleanup of an oil spill on properties neighboring the land Jericho sought to purchase. However, Midtown gave Jericho the name of a contact person at the New York Department of Environmental Conservation, his telephone number, and a project number and spill number for the incident at issue, so that Jericho could find out the status of any spill and/or cleanup.

On the day before the study period expired, Jericho asked Midtown for the exhibits to a development agreement between Midtown and Amtrak. The agreement had been included with the contract, but not the exhibits. Midtown responded that it did not have the requested exhibits. It also reminded Jericho that it had 75 days during the study period to request the exhibits from Amtrak, or to meet with employees of Amtrak to

discuss any issues regarding its easement. On September 3, 2002, counsel for Jericho sent Midtown a letter stating: "Be advised that, unless you advise us in writing th[at] Midtown is willing (i) to make an affirmative representation that the oil spill referred to in my earlier letter of today's date has been cleaned up and paid for or (ii) to undertake whatever cleanup may be necessary at its cost and expense or (iii) to extend the Study Period for a sufficient time to allow Jericho to investigate this matter, and, in any case provide Jericho with the requested due diligence documentation, Jericho requests that the monies paid upon execution of the contract be returned to it in accordance with the Contract's terms." Midtown responded by requesting an express statement from Jericho as to whether it intended to cancel the contract. It indicated that in the absence of such express statement, it would presume that Jericho intended to proceed to closing on September 18, 2002 pursuant to the terms of the contract.

On September 12, 2002, Jericho sent Midtown a letter stating: "Although Jericho's principals felt, and still feel, that, under the circumstances which came to light in the month of August, either some affirmative response with respect to the oil spill or an extension of the study period and the request for production of documents was warranted, this letter will serve as confirmation that our letter on behalf of Jericho dated September 3, 2002, requesting the return of Jericho's down payment was intended as the exercise of Jericho's right under paragraph 29 (a) of the referenced contract to cancel said contract and receive the return of the monies paid upon execution thereof." Midtown returned the $250,000 down payment the next day.

Two years later Jericho instituted this action. Its amended complaint contained five causes of action, with several alternative requests for relief. The first claim asserted breach of the contract of sale and seeks reinstatement of the contract and specific performance thereunder. A second claim, also for breach of the sales contract, sought $50 million in damages. The third cause of action alleged that Midtown wrongfully repudiated its July 15, 2002 offer to extend the study period through December 31, 2002, and it sought reinstatement of the original contract of sale. The fourth claim mirrored the allegations in the third cause of action and sought $50 million in damages. In the fifth and final cause of action, Jericho claimed that Midtown defrauded it by failing to disclose (1) its business relationship with the escrow agent; (2) the unavailability of the exhibits to an agreement with Amtrak which would have clarified questions about the scope of the railway's easement; and (3) the oc-

currence and ramifications of an oil spill. The fifth cause of action also sought $50 million in damages.

Midtown moved to dismiss the complaint, and Jericho opposed. In the order appealed, the IAS court denied Midtown's motion. We reverse and dismiss the complaint.

Standard of Review

On a motion to dismiss pursuant to CPLR 3211, the complaint is afforded a liberal construction (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). The facts alleged in the complaint are presumed to be true, and it is the role of the court to "accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner*, 96 NY2d 300, 303 [2001]). However, dismissal is warranted if the documentary evidence contradicts the claims raised in the complaint (*id.*; *Mobil Oil Corp. v Joshi*, 202 AD2d 318, 318-319 [1994]).

Breach of the Original Contract

The first and second causes of action, alleging breach of the contract to purchase the subject property, should have been dismissed. On September 3, 2002, the last day of the study period, Jericho requested return of its down payment unless it received certain "due diligence" information from Midtown. Midtown advised Jericho that it would not return the down payment unless, pursuant to the terms of the contract, Jericho acknowledged in writing that the contract was cancelled. On September 13, Jericho sent a letter stating that it was exercising its option to cancel the contract, and it demanded the return of its down payment.

The assertions in this complaint, brought two years subsequent to the cancellation of the agreement, do not support Jericho's allegation that Midtown breached the contract to sell the subject property, but instead indicate that Jericho cancelled the contract and recovered its down payment (*see Eight Hundred Corp. v 217 State St. Realty Corp.*, 169 AD2d 810 [1991]). An additional ground for dismissal of the first and third causes of action is the settled rule that a party cannot seek specific performance of a cancelled real estate contract (*Degree Sec. Sys., Inc. v F.A.B. Land Corp.*, 17 AD3d 402, 403 [2005] [specific performance unavailable where a contact for sale of real estate was validly cancelled]; *see also Gartner v Young-Hee Lowe*, 299 AD2d 198 [2002], *lv denied* 100 NY2d 501 [2003]; *Abely v Hayden*, 155 AD2d 254, 256 [1989]; *Bennett v John*, 151 AD2d 711 [1989]).

Had Midtown willfully or deliberately breached its obligations

under paragraph 29 (a) of the contract, Jericho's first two causes of action would not have been barred by its termination of the contract and recovery of its down payment (*Mokar Props. Corp. v Hall*, 6 AD2d 536, 539-540 [1958]). However, Jericho's allegations, to the extent they allege willful or deliberate breach of contract, are either contradicted by the documentary evidence submitted on the motion (*see Arnav, supra*) or premised on a misreading of Midtown's obligations under paragraph 29 (a). Thus, the rule articulated in *Mokar* is inapplicable to these facts.

Breach of the Agreement to Extend the Study Period to December 2002

We also dismiss the third and fourth causes of action on the ground that there was never any agreement to extend the study period through December 2002. On July 15, 2002 and on July 25, 2002, Midtown offered to extend the study period to December 2002. Midtown's July 15 letter set forth the terms of the extension in detail, and required that if the extension were agreed upon, the terms had to be spelled out, signed by both parties, and incorporated as an amendment to the original contract. In response to both the July 15 and the July 25 offers, Jericho proposed counteroffers. In August of 2002 Jericho attempted to accept the earlier extension offer, in a letter which acknowledged its understanding that Midtown conditioned any extension of the study period upon the execution of a formalized signed writing (*see BMH Realty v 399 E. 72nd St. Owners*, 221 AD2d 165 [1995] ["the documents themselves make clear that the parties did not intend to be bound until a formal agreement was executed"]; *Brause v Goldman*, 10 AD2d 328, 332-333 [1960], *affd* 9 NY2d 620 [1961] [same]).

Further, it is a fundamental tenet of contract law that a counteroffer constitutes a rejection of an offer as a matter of law (*J. Grotto & Assoc. v Hiro Real Estate Co.*, 271 AD2d 360 [2000]; *Kleinberg v Ambassador Assoc.*, 103 AD2d 347, 348 [1984], *affd* 64 NY2d 733 [1984]; *Greystone Partnerships Group, Inc. v Koninklijke Luchtvaart Maatschappij N.V.*, 815 F Supp 745, 753 [SD NY 1993]). Rejection by counteroffer extinguishes the offer and renders any subsequent acceptance thereof inoperative (*Kleinberg, supra*). Here, all of Midtown's offers to extend the study period to December 2002 were met by counteroffers by Jericho, for different extensions on different terms. Accordingly, the December 2002 study period extension offer was "null and void" by the time Jericho determined to accept it. We thus dismiss the third and fourth causes of action, premised upon an alleged agreed-upon extension of the study period.

## Fraud

Jericho's fifth cause of action, presumably alleging fraud and deceit, averred that as a result of Midtown's misrepresentations, it suffered $50 million in damages. Jericho contends that because it was not provided with (1) information concerning the fact that the escrow agent had an ownership interest in Midtown; (2) exhibits to an agreement with Amtrak which would have clarified questions about the scope of the railway's easement; and (3) information concerning the occurrence and ramifications of an oil spill, it was unable to conduct due diligence review of the purchase offer.

However, none of these allegations constitute actionable fraud. Midtown's obligation to provide documents flowed from the "due diligence" requirements of paragraph 29 (a) of the contract (*see Tesoro Petroleum Corp. v Holborn Oil Co.*, 108 AD2d 607 [1985], *appeal dismissed* 65 NY2d 637 [1985]). Accordingly, Jericho's allegations that Midtown intended to breach a contractual obligation does not support an action for fraud (*see 767 Third Ave. LLC v Greble & Finger, LLP*, 8 AD3d 75, 76 [2004]; *Modell's N.Y. v Noodle Kidoodle*, 242 AD2d 248, 249 [1997]; *Devlin v 645 First Ave. Manhattan Co.*, 229 AD2d 343, 344 [1996]; *Tesoro, supra*). As to the escrow agent, the contract expressly provided that Midtown's lawyers would act in this role. There is no evidence that there was any misconduct with respect to the escrow account which would support a claim of fraud. Further, the record is plain that Midtown provided Jericho with information in its possession, and that it alerted Jericho as to additional sources of information as to the railway easement and the alleged oil spill. It should also be noted that Jericho made requests for documents on the eve of the expiration period which could have been made much earlier. As there was no evidence of actionable fraud, we dismiss the fifth cause of action.

## Damages

Finally, it bears noting that the relief sought by the second and fourth causes of action ($50 million) would not have been available to plaintiff even if the alleged breach of contract had occurred. Paragraph 22 of the contract limits Midtown's liability for breach to return of Jericho's down payment. As the down payment was returned when the contract was cancelled, two years before this action was commenced, Jericho has no further recourse against Midtown with respect to that agreement (*Progressive Solar Concepts v Gabes*, 161 AD2d 752, 753 [1990]). Concur—Mazzarelli, J.P., Saxe, Nardelli, Sweeny and McGuire, JJ.