McCarthy, J.R
 

 Appeal from an order of the Supreme Court (Mott, J.), entered May 17, 2016 in Ulster County, which, among other things, granted defendant Irene C. Vitti’s motion for summary judgment dismissing the complaint against her.
 

 Plaintiff was interested in participating in a project for generators of solar power, but the project application required proof of exclusive control over the intended generation site. To obtain such an interest in a site, plaintiff contacted a real estate broker. The broker contacted defendant Irene C. Vitti (hereinafter defendant), who owned a parcel of real property in the desired area. On July 11, 2012, plaintiff sent the broker an email with an attached offer letter. The letter stated that it was an offer to purchase defendant’s property for a certain price, noted plaintiff’s intention to use the property to develop solar power, requested a 60-day due diligence and exclusivity period commencing on July 16, 2012, stated that the parties would complete a formal purchase agreement during the first 60-day period, requested the option to purchase a second 60-day period at a set rate, and asked that defendant confirm the agreement and the two 60-day exclusivity periods by signing the letter.
 

 On July 12, 2012, defendant sent the broker an email noting that, per their conversation with plaintiff’s representatives, defendant’s proposed side letter was attached. She asked that the broker transmit it to plaintiff and let her know if they are receptive to it. That same day, defendant sent an email directly to plaintiff’s representative with the proposed side letter attached, asking for plaintiff’s comments on it. The proposed side letter stated that defendant had reviewed plaintiff’s offer to purchase her property and that defendant was “prepared to accept the terms of [plaintiff’s] offer and sign the [l]etter, conditioned on” three specified modifications. The proposed side letter contained defendant’s typed name, but not her signature, and asked plaintiff to confirm agreement to these terms by signing thereon.
 

 On July 13, 2012, defendant informed the broker that she rejected plaintiff’s offer to purchase her property, and the broker said she would inform plaintiff. Defendant also personally informed plaintiff that she was not proceeding with the proposed sale to plaintiff. At some point that same day, plaintiff signed the proposed side letter and transmitted it to defendant. Despite plaintiff’s insistence that defendant was contractually bound by their agreement, defendant entered into an exclusivity agreement with another solar-generating company.
 

 Plaintiff commenced this action alleging that defendant breached their contract and breached the covenant of good faith and fair dealing. Defendant moved for summary judgment dismissing the complaint against her. Plaintiff cross-moved for, among other things, summary judgment. Supreme Court denied plaintiff’s cross motion for summary judgment, granted defendant’s motion and dismissed the complaint against her. Plaintiff appeals.
 
 [1]
 

 To prevail on her motion for summary judgment, defendant was required to demonstrate the absence of any material triable issue of fact. Specifically, she contends that she did not enter into a contract with plaintiff and, if she did, any alleged contract was void based on the statute of frauds. If the written language of an alleged contract is ambiguous and a court cannot interpret the document without resorting to extrinsic evidence, credibility comes into play and the parties’ intentions present a factual matter that must be decided by the factfinder (see Agosta v Fast Sys. Corp., 136 AD3d 694, 694 [2016]; Brighton Inv., Ltd. v Har-Zvi, 88 AD3d 1220,1222-1223 [2011]). To prove that no binding contract was formed, defendant was required to show that there was no meeting of the minds, or that an offer was revoked before it was accepted.
 

 To form a contract, the offeree must agree to all of the material terms of the offer (see Stonehill Capital Mgt. LLC v Bank of the W., 28 NY3d 439, 448 [2016]); if the purported acceptance is qualified with conditions, “it is equivalent to a rejection and counteroffer” (Lamanna v Wing Yuen Realty, 283 AD2d 165, 166 [2001] [internal quotation marks and citation omitted], lv denied 96 NY2d 719 [2001]; see Jericho Group, Ltd. v Midtown Dev., L.P., 32 AD3d 294, 299 [2006]). “Rejection by counteroffer extinguishes the offer and renders any subsequent acceptance thereof inoperative” (Jericho Group, Ltd. v Midtown Dev., L.P., 32 AD3d at 299 [citation omitted]). The plain language of defendant’s proposed side letter constituted a rejection of plaintiff’s offer and possibly created a counteroffer based on the newly suggested terms. When read together to determine whether the parties formed a contract providing for an exclusivity period (see Post Hill, LLC v E. Tetz & Sons, Inc., 122 AD3d 1126, 1127 [2014]), the language of the offer, proposed side letter and cover emails is ambiguous, requiring the court to look at extrinsic evidence to determine the parties’ intent (see Brighton Inv., Ltd. v Har-Zvi, 88 AD3d at 1222-1223).
 

 Despite this ambiguity that would otherwise require a trial, defendant would still be entitled to summary judgment if she established as a matter of law that the alleged counteroffer was withdrawn before it was accepted. Given the conflicting information from defendant, the broker and plaintiff’s representatives concerning the timing of events, a triable question of fact exists regarding whether plaintiff accepted a pending counteroffer, thereby creating a binding contract, or whether defendant had already revoked the alleged counteroffer, thereby precluding its acceptance and the formation of a contract.
 

 Regardless of these factual questions concerning the existence of a contract, defendant is entitled to summary judgment if she established that the statute of frauds rendered the alleged contract void. Under the statute of frauds applicable to contracts concerning real property, an interest in real property can only be created, granted or assigned by a written document, subscribed by the person granting the interest (see General Obligations Law § 5-703 [1]). “A contract for . . . the sale[ ] of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged” (General Obligations Law § 5-703 [2]). “Because an option to purchase an interest in real property is in effect a conditional contract for a future conveyance of land, a contract that creates such an option is within the [s]tatute of [flrauds” and must be in writing to be valid (Kaplan v Lippman, 75 NY2d 320, 325 [1990]).
 

 Plaintiff contends that the contract did not involve an interest in land, but was a personal contract that merely involved an exclusivity period. This argument is belied by plaintiffs offer letter, which contained the subject line “Offer to Purchase Real Estate” and stated in its first sentence that it was an offer to purchase the referenced property, along with the acreage and purchase price. The conditions in defendant’s proposed side letter related to the purchase of property and did not mention any exclusivity period. Because the alleged contract concerns a sale of, or interest in, real property, the statute of frauds applies (see General Obligations Law § 5-703 [1], [2]).
 

 As the contract had to be in writing, any oral agreement during the conference call was invalid. The memorandum expressing the contract did not have to be contained in one document, but could consist of separate signed and unsigned writings that, read together, clearly refer to the same transaction and contain all of the essential terms of a binding contract, as long as the unsigned writings were created by the party to be charged (see Post Hill, LLC v E. Tetz & Sons, Inc., 122 AD3d at 1127; see also Agosta v Fast Sys. Corp., 136 AD3d at 695). “At least one document signed by the party to be charged must establish a contractual relationship between the parties, with the unsigned documents referring on their face to the same transaction” (Post Hill, LLC v E. Tetz & Sons, Inc., 122 AD3d at 1127 [internal quotation marks, brackets and citations omitted]; see Agosta v Fast Sys. Corp., 136 AD3d at 695).
 

 Defendant is the party to be charged, but she did not put pen to paper and physically sign any relevant document. Plaintiff contends that defendant’s act of typing her name at the bottom of the proposed side letter constituted her signature and agreement to be bound. We disagree. While emails may comprise some of the documents that are read together to form a contract (see Brighton Inv., Ltd. v Har-Zvi, 88 AD3d at 1222), the question here is whether any of the relevant documents were signed by defendant.
 
 [2]
 

 Plaintiff cites to decisions from other Departments that have held that “[a]n e-mail sent by a party, under which the sending party’s name is typed, can constitute a writing for purposes of the statute of frauds” (Newmark & Co. Real Estate Inc. v 2615 E. 17 St. Realty LLC, 80 AD3d 476, 477 [2011]; see Agosta v Fast Sys. Corp., 136 AD3d at 695; Williamson v Delsener, 59 AD3d 291, 291 [2009]; Naldi v Grunberg, 80 AD3d 1, 11-12 [2010], lv denied 16 NY3d 711 [2011]; Stevens v Publicis S.A., 50 AD3d 253, 255-256 [2008], lv dismissed 10 NY3d 930 [2008] ).
 
 [3]
 
 Those holdings are consistent with the Electronic Signatures and Records Act (hereinafter ESRA), in which the Legislature provided that, “unless specifically provided otherwise by law, an electronic signature may be used by a person in lieu of a signature affixed by hand. The use of an electronic signature shall have the same validity and effect as the use of a signature affixed by hand” (State Technology Law § 304 [2]; see 9 NYCRR 540.4). An electronic signature is defined as “an electronic sound, symbol, or process, attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the record” (State Technology Law § 302 [3]). “ ‘Electronic record’ shall mean information, evidencing any act, transaction, occurrence, event, or other activity, produced or stored by electronic means and capable of being accurately reproduced in forms perceptible by human sensory capabilities” (State Technology Law § 302 [2]).
 

 Under ESRA, plaintiff would have a viable argument that defendant signed the emails she sent, as they are electronic records and she typed her name at the end of each. As confirmed at oral argument, however, plaintiff does not contend that the emails constituted signed documents forming the contract, but that defendant’s typed name at the end of the proposed side letter constituted her signature. That document was separately typed and attached to emails for transmission. Although emails are electronic records, not every attachment to an email qualifies as an electronic record under ESRA. One of the purposes of ESRA is “to promote the use of electronic technology in the everyday lives and transactions” of government entities, businesses and average citizens (L 2002, ch 314, § 1, available in 2002 McKinney’s Session Laws of NT at 1034 [statement of legislative intent]; see Letter from William Pelgrin, Counsel of Office for Technology, Aug. 19, 1999, Bill Jacket, L 1999, ch 4 at 32-33). To fulfill this purpose, it was necessary for the Legislature to permit emails to be considered equivalent to signed writings when that was the sender’s intent (see Naldi v Grunberg, 80 AD3d at 11-13), because it was not possible to place a handwritten signature on an email or similar electronic record that was being transmitted electronically.
 

 The same logic does not apply to ordinary typed documents that are scanned and attached to emails, because a party could easily affix a handwritten signature to those documents. Indeed, defendant provided a signature line for plaintiff on the proposed side letter and requested that plaintiff’s representative sign it to acknowledge acceptance of her conditions. The record demonstrates that plaintiff’s representative must have printed a copy of the proposed side letter and endorsed it with his handwritten signature, then scanned and emailed the signed copy to defendant. That ordinary letter did not transform into an electronic record simply by virtue of its attachment to an electronic record (i.e., defendant’s email), revert to a non-electronic record when printed and signed, then transform into an electronic record again when the signed copy was scanned and attached to a new email. In sum, the record does not demonstrate that the proposed side letter, itself, was an electronic record.
 

 Defendant typed her name to the proposed side letter but did not sign it, although affixing her signature would have been easy and she requested that plaintiff affix an actual signature to it. Thus, even though that letter was attached to an email, we reject plaintiff’s argument that defendant’s typed name at the bottom of the letter constituted a signature. Because no document was signed by defendant, the alleged contract—assuming one was ever formed—did not satisfy the statute of frauds and is void. As the claims against defendant were based on the alleged contract, defendant was entitled to summary judgment dismissing the complaint against her.
 

 Lynch, Devine, Clark and Pritzker, JJ., concur.
 

 Ordered that the order is affirmed, with costs.
 

 [1]
 

 . Plaintiff’s cross motion also sought to add the broker as a party. Supreme Court partially granted that request, which is not at issue on this appeal.
 

 [2]
 

 . In the cited case, we held that “[a]n unsigned contract may be enforceable when objective evidence establishes that the parties intended to be bound, and an exchange of e-mails may constitute an enforceable contract . . . when the communications are sufficiently clear and concrete to establish such an intent” (Brighton Inv., Ltd. v Har-Zvi, 88 AD3d at 1222 [internal quotation marks and citations omitted]). However, the statute of frauds was inapplicable to the contract at issue in that case, so no signed writing was required.
 

 [3]
 

 . Some of those holdings (see Agosta v Fast Sys. Corp., 136 AD3d at 695; Newmark & Co. Real Estate Inc. v 2615 E. 17 St. Realty LLC, 80 AD3d at 477; see also Rosenfeld v Zerneck, 4 Misc 3d 193, 195-196 [Sup Ct, Kangs County 2004]) rely upon General Obligations Law § 5-701 (b) (4) for this broad proposition. Because that statutory provision is expressly limited to transactions dealing with qualified financial contracts, reliance thereon is faulty where the contract deals with any other subject, such as a contract concerning an interest in real property.