Galarneau v D'Andrea (2020 NY Slip Op 03584)





Galarneau v D'Andrea


2020 NY Slip Op 03584


Decided on June 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 25, 2020

530126

[*1]Lucien Galarneau Jr., Appellant,
v
Robert D'Andrea et al., Respondents.

Calendar Date: May 21, 2020

Before: Egan Jr., J.P., Mulvey, Aarons, Pritzker and Colangelo, JJ.


Powers & Santola, LLP, Albany (Michael J. Hutter of counsel), for appellant.
Lippes Mathias Wexler Friedman LLP, Albany (Thomas D. Latin of counsel), for respondents.



Pritzker, J.
Appeal from a judgment of the Supreme Court (R. Sise, J.), entered February 21, 2019 in Saratoga County, upon a decision of the court in favor of defendants.
In 2013, plaintiff met with defendants Robert D'Andrea and Joseph D'Andrea to discuss the sale of a 166-acre parcel of real property on Crescent Avenue in the City of Saratoga Springs, Saratoga County (hereinafter the subject property), then owned by Robert D'Andrea, Joseph D'Andrea and their brother, defendant Faust D'Andrea. Ultimately, the sale did not occur and, in 2015, plaintiff commenced this action seeking specific performance or, alternatively, money damages under theories of breach of contract and equitable estoppel. Plaintiff also alleged a cause of action for unjust enrichment and sought a vendee's lien on the subject property. Following defendants' joinder of issue, Supreme Court granted their motion to dismiss the complaint with the sole exception of plaintiff's cause of action for breach of contract seeking specific performance by application of the doctrine of part performance (60 Misc 3d 1205[A], 2017 NY Slip Op 52007[U], *1-5 [Sup Ct, Saratoga County 2017], affd 162 AD3d 1169 [2018]). In December 2018, the parties proceeded to a nonjury trial on plaintiff's remaining cause of action. Supreme Court, in a written decision, found that the evidence presented at trial did not support plaintiff's claim that the parties entered into a contract and dismissed plaintiff's remaining cause of action for specific performance. Plaintiff appeals.
We turn first to plaintiff's argument that Supreme Court erred in finding that he failed to establish that there was a valid and enforceable oral agreement [FN1] for the purchase and sale of the subject property. "When reviewing a nonjury verdict, [this Court] independently review[s] the probative weight of the evidence, together with the reasonable inferences that may be drawn therefrom, and grant[s] the judgment warranted by the record while according due deference to the trial court's factual findings and credibility determinations" (Ross v GEICO Indem. Co., 172 AD3d 1834, 1835 [2019] [internal quotation marks and citations omitted]; see Grimaldi v Sangi, 177 AD3d 1208, 1209 [2019]). As relevant here, "[i]t is fundamental that specific performance may be awarded only where there is a valid existing contract for which to compel performance" (Isabella v Jackling, 155 AD3d 1650, 1651 [2017] [internal quotation marks, brackets and citation omitted]). "To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound" (Kasowitz, Benson, Torres & Friedman, LLP v Duane Reade, 98 AD3d 403, 404 [2012] [internal quotation marks and citations omitted], affd 20 NY3d 1082 [2013]). "An oral agreement may be enforceable as long as the terms are clear and definite and the conduct of the parties evinces mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms" (Kramer v Greene, 142 AD3d 438, 439 [2016] [internal quotation marks and citations omitted]; see Tompkins Fin. Corp. v John M. Floyd & Assoc., Inc., 144 AD3d 1252, 1253 [2016]).
At trial, plaintiff testified that, in late August 2013, he ran into Robert D'Andrea and the two discussed the subject property. Plaintiff testified that Robert D'Andrea told him that he was seeking $4 million for the entire subject property, which, under applicable zoning amendments, permitted the development of 50 lots. Plaintiff testified that he expressed to Robert D'Andrea that that price was too high for 50 lots, but that "it would be interesting if we could get enough lots on the [subject] property." Plaintiff testified that, following this discussion and "probably two" subsequent phone conversations, plaintiff began researching the subject property and discovered that, approximately 10 years prior, the City of Saratoga Springs adopted a comprehensive plan that dramatically decreased the number of homes permitted to be developed on the subject property from 300 or 400 lots to 50 lots. Plaintiff testified that he met with Robert D'Andrea and Joseph D'Andrea and informed them of this discovery. Plaintiff also testified that he wanted to seek the necessary approvals to increase the number of lots by making a presentation to the Comprehensive Review Plan committee regarding the unfairness of the substantial decrease in the number of developable lots that previously occurred. Robert D'Andrea and Joseph D'Andrea were supportive of this plan.
Plaintiff testified that, after this meeting, he sent Robert D'Andrea and Joseph D'Andrea a letter, dated October 31, 2013, which recited what he believed to be the parties' understanding of the terms of his purchase of the subject property. Among these terms was a purchase price of $4 million and a 1% interest rate, "to begin upon final approval." Plaintiff testified that, although he never received any response regarding the letter, he started working on the project and invested significant time and resources, totaling $200,000, into an application to change the zoning and increase the number of permissible lots per acre. Ultimately, the application was denied. Robert D'Andrea testified that, after the zoning change was denied, he had a meeting with plaintiff wherein they discussed denial of the application and plaintiff told him that he thought the subject property was only worth $3 million. Robert D'Andrea testified that "at that point I told [plaintiff] we're through, we would turn to another developer who had been sitting at the sidelines for a long time waiting."
It was plaintiff's burden to establish "the existence, terms and validity of a contract" (Amica Mut. Ins. Co. v Kingston Oil Supply Corp., 134 AD3d 750, 752 [2015] [internal quotation marks and citation omitted]; see Kelly v Bensen, 151 AD3d 1312, 1313 [2017]). Our independent review of the evidence reveals that this burden was not satisfied (see Grimaldi v Sangi, 177 AD3d at 1209; Ross v GEICO Indem. Co., 172 AD3d at 1835). Although Robert D'Andrea and Joseph D'Andrea acknowledged that they offered plaintiff the opportunity to purchase the subject property for $4 million, plaintiff failed to accept the offer insofar as he testified that he conditioned his acceptance on obtaining zoning approval for additional lots on the property. Where, as here, an offer is met with qualified conditions, "it is equivalent to a rejection and counteroffer" (Lamanna v Wing Yuen Realty, 283 AD2d 165, 166 [2001] [internal quotation marks and citation omitted], lv denied 96 NY2d 719 [2001]; accord Solartech Renewables, LLC v Vitti, 156 AD3d 995, 997 [2017]).
Moreover, even if plaintiff's condition was part of the original alleged agreement — and there is no evidence to suggest that it was — plaintiff still failed to show acceptance of the offer, as there is conflicting testimony as to whether the terms included in the October 31, 2013 letter complied with the terms of the offer. If the terms therein were modified, then the letter operated as a rejection and counteroffer because it effectively presented newly suggested terms (see Solartech Renewables, LLC v Vitti, 156 AD3d at 997). In that regard, although plaintiff testified that he believed Joseph D'Andrea eventually agreed to the 1% interest rate, Joseph D'Andrea and Robert D'Andrea testified to the contrary, both stating that, during the meetings that predated the October 31, 2013 letter, Joseph D'Andrea clearly rejected this term. Despite the rejection of this term, plaintiff's October 31, 2013 letter includes reference to it. Additionally, the letter indicates that "[p]ayment to be made proportionately as each lot closes." This term is problematic, however, as there was no evidence presented that defendants would accept installment payments of any kind, which is directly at odds with the letter. This term is also problematic as there is no clear agreement as to how many lots would be developed on the subject property; therefore, there is no clear agreement as to how many payments would be made to equal the $4 million offer. Given the conflicting testimony as to these material terms, we accord due deference to Supreme Court's credibility determinations (see AMCAT Global, Inc. v Greater Binghamton Dev., LLC, 140 AD3d 1370, 1372 [2016], lv denied 28 NY3d 904 [2016]). As plaintiff failed to show that there was a valid and enforceable oral agreement, he is not entitled to specific performance (compare Bayly v Broomfield, 93 AD3d 909, 910 [2012]). Based upon this determination, plaintiff's remaining arguments are rendered academic.
Egan Jr., J.P., Mulvey, Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, with costs.



Footnotes

Footnote 1: Plaintiff concedes that there is no written agreement.