■ KEIS DISTRIBUTORS, INC., Appellant-Respondent, v NORTHERN DISTRIBUTING COMPANY, INC., Respondent-Appellant. [641 NYS2d 417] —Cardona, P. J. Appeal from an order of the Supreme Court (Teresi, J.), entered July 18, 1995 in Albany County, which denied plaintiff's motion for partial summary judgment and denied defendant's cross motion to compel discovery.

This case involves the interpretation of a document signed by the parties relative to the sale of a portion of plaintiff's assets to defendant. Plaintiff and defendant are both wholesale beer distributors. In early 1994, the parties began negotiations concerning defendant's purchase of certain brands of beer from plaintiff. It is not disputed that the sale did not involve solely the sale of inventory. In general, beer manufacturers appoint distributors to sell their merchandise in certain specified geographic territories. The distributors, in turn, expend time and money promoting the product to their retail customers. Thus, the sale of a distributor's stock encompasses a return on the distributor's investment in developing a market for the manufacturer's goods. It also includes the withdrawal of the distributor from the distribution area.

Here, in connection with the parties' negotiations, defendant asked for and received sales figures from plaintiff. On February 17, 1994 and February 22, 1994, defendant made two offers to purchase certain of the brands that plaintiff carried. Both

offers were rejected. On March 23, 1994, defendant made a third offer, requesting the purchase of 683,136 cases of Genesee beer at $1.75 per case and 95,632 cases of Labatts/Rolling Rock beer at $2 per case. The offer contained an expiration date of April 11, 1994 and directed plaintiff to "accept this offer by signing below". Plaintiff countersigned as instructed. In the cover letter accompanying plaintiff's acceptance, plaintiff suggested both sides retain counsel to work out the "wording of the final details". A proposed "closing and consulting agreement" was drafted but never signed. In the meantime, plaintiff withdrew from the agreed-upon distribution areas and defendant purchased some of plaintiff's inventory. The amount owed for the inventory is, however, in dispute. Defendant tendered a check to plaintiff for $69,476.60 but plaintiff claims that it was owed $118,021.81. The dispute centers around whether defendant was entitled to an offset of returnable deposits paid to plaintiff's retail customers.

As a result of the parties' failure to resolve their differences, plaintiff commenced this action on September 20, 1994. Plaintiff contended that the March 23, 1994 document was a valid contract and alleged, *inter alia*, breach of contract, an account stated and unjust enrichment. Defendant answered asserting seven affirmative defenses and five counterclaims, which allege fraud in fact, fraud in the inducement and that the March 23, 1994 document was not a contract. Defendant also made a request for documentary discovery. Plaintiff moved for summary judgment on its first two causes of action based on the March 23, 1994 document and on its fifth and sixth causes of action based on the account stated claim. Defendant opposed the motion and cross-moved to compel discovery. Supreme Court denied both motions, prompting both sides to appeal.*

"There can be no contract absent a mutual intent to be bound" (*Four Seasons Hotels v Vinnik*, 127 AD2d 310, 316). The question of intent is for the court to decide as a matter of law if the language employed is unambiguous; if, however, it is not free from ambiguity and resort must be had to extrinsic evidence, then intent must be determined by the finder of fact (*see, supra*). Where the parties' intention to be bound is evidenced by a document's language and terms, then it is such manifestation of the parties' intention, rather than actual or real intention, which controls (*see, Conopco, Inc. v Wathne,*

---

* Although defendant raises arguments concerning plaintiff's third and fourth causes of action, they were not at issue before Supreme Court and are therefore not properly before us.

*Ltd.*, 190 AD2d 587, 588). In this case, we are of the view that there are no triable issues of fact with respect to whether the March 23, 1994 document constituted a binding contract.

The initial issue is whether the March 23, 1994 document was an offer. An offer is the "manifestation of willingness to enter into a bargain and * * * it must be definite and certain" (*Concilla v May*, 214 AD2d 848, 849, *lv denied* 86 NY2d 705). Here, the March 23, 1994 letter indicates a willingness to buy the product from plaintiff and contains the definiteness and certainty required of an offer; its tone is not simply informational or exploratory (*cf., supra*). Specifically, defendant stated that it was "willing at this time to offer" plaintiff a set price for two of the brands that plaintiff carried. Defendant stated that it was "attaching an expiration date of April 11, 1994 to this offer" and that plaintiff was to "accept this offer by signing below in order that this transaction may be completed in a favorable manner". Plaintiff complied with defendant's instructions. The writing unequivocally manifested the parties' intent to form a binding contract.

Defendant's president averred that it was his subjective understanding that the legal effect of the March 23, 1994 document was only an intent to continue negotiations; however, that is insufficient to raise an issue of fact with respect to whether there was a contract (*see, Conopco, Inc. v Wathne, Ltd., supra*, at 588; *see also, Dryden Cent. School Dist. v Dryden Aquatic Racing Team*, 195 AD2d 790, 793). He points to the "closing and consulting agreement", a much more detailed document which was never signed by the parties, to support his contention that the first document was not binding. However, the March 23, 1994 document contains all the essential terms of the contract and the fact that the parties intended to negotiate a more detailed arrangement does not negate its legal effect (*see, Conopco, Inc. v Wathne, Ltd., supra*, at 588). We also note that the document itself did not condition consummation of the transaction upon the completion and signing of a definitive agreement (*cf., Schomann Entertainment Corp. v Fribley*, 167 AD2d 808). The interpretation urged by defendant is contrary to the plain words used in the document; if defendant had intended a more limited meaning for the agreement, then the burden was upon defendant, as the drafter of the document, to so specify and its failure to do so must not operate to plaintiff's detriment (*see, Slamow v Del Col*, 174 AD2d 725, 726-727, *affd* 79 NY2d 1016).

Defendant's president further argues that it is industry custom to negotiate for the purchase of brands by setting out

the terms in a memorandum prior to entering into a contract. He, however, offers no proof other than his own assertion to support that contention. Although a court must accept as true the evidence presented by the nonmoving party (*see, Hourigan v McGarry*, 106 AD2d 845), only the existence of a bona fide issue raised by evidentiary facts and not one based on conclusory allegations will defeat a motion for summary judgment (*see, Rotuba Extruders v Ceppos*, 46 NY2d 223, 231). Defendant's submission was insufficient to raise a triable issue of fact on this point.

Having determined that a valid contract existed, we turn to defendant's contentions of fraud in fact and fraud in the inducement. Absent the presence of any colorable defenses, an agreement will be upheld according to its terms (*see, Beltrone Constr. Co. v State of New York*, 189 AD2d 963, 965, *lv denied* 81 NY2d 709). Here, according to defendant, the sales figures provided by plaintiff were artificially inflated due to "transshipping", a practice whereby the distributor sells to retailers located outside of its distribution area. Defendant also contended that the negotiations were premised on the good faith belief that plaintiff had current franchise/equity agreements with the manufacturers of the brands at issue. Franchise/equity agreements commit a manufacturer to use the services of a certain distributor and prohibit a distributor from selling outside a specific territory. According to defendant, when a distributor sells the brands it carries to another distributor, the former will "lobby" the manufacturer to appoint the latter under the existing franchise/equity agreement. Defendant contended that it did not know at the time of the parties' negotiations that plaintiff did not have such agreements and that, had it known, it would not have negotiated with plaintiff. It also contended that plaintiff implied that it had viable franchise/equity agreements with the manufacturers of the two brands in issue.

In our view, however, there is nothing in the record beyond surmise, conjecture and unsupported conclusory allegations to support defendant's claims that plaintiff acted fraudulently (*see, Buffalo Structural Steel Corp. v Elsand Steel*, 159 AD2d 849, 850). Defendant's assertions are simply too uncertain to defeat summary judgment in plaintiff's favor. Defendant did not substantiate its claims by documents or other evidentiary proof (*see, Fine Arts Enters. v Levy*, 149 AD2d 795, 797). In support of its contention that plaintiff's sales figures were inflated due to transshipping, defendant offered only a comparison between plaintiff's 1993 sales figures and defendant's lower 1994

sales figures. In our view, this discrepancy alone was insufficient to support a claim of fraud.

There was also no evidentiary proof offered concerning the claim that plaintiff falsely stated that it had franchise/equity agreements. In this regard, we note that the negotiations were conducted by "sophisticated, counseled parties dealing at arm's length" (*Chimart Assocs. v Paul*, 66 NY2d 570, 574). Although defendant claimed that the existence of such agreements was crucial, it admittedly made its March 23, 1994 offer without obtaining copies of such agreements. In addition, although defendant presented proof that one of the manufacturers, Genesee, had terminated its franchise/equity agreement with plaintiff in 1991, there was no proof that plaintiff falsely told defendant that such an agreement was still in effect. In addition, as plaintiff points out, the expired franchise/equity agreement between it and Genesee specifically provided that it was "personal to [plaintiff] and may not be assigned, transferred or subcontracted by [plaintiff]". Even defendant's averments concede that the selling distributor (here plaintiff) will only "lobby" the manufacturer to appoint the buying distributor (here defendant) to the franchise/equity agreement. Thus, there was no proof that a sale by a distributor carried with it any guarantee that the new distributor would be appointed by the manufacturer as the latter's exclusive agent under a franchise/equity agreement.

Finally, plaintiff submitted proof that defendant had actually been appointed by Genesee as its distributor *prior* to defendant's making its March 23, 1994 offer. Defendant, therefore, failed to assemble and lay bare affirmative proof to establish that the alleged fraud was real and capable of being proven at trial (*see, Jabs v Jabs*, 221 AD2d 704, 704-705). We are also of the view that further discovery would not aid defendant in this regard. Plaintiff has objected to several of defendant's discovery demands. The disputed documents, however, even if ultimately provided to defendant, bear no relation to defendant's claim of fraud.

We do, however, agree with Supreme Court that issues of fact exist with respect to plaintiff's causes of action for an account stated. For example, there is a factual issue as to whether the purchase was to be made without any adjustments based on deposits or was intended to include subsequent deductions for such deposits. It is simply not clear from the submitted invoices what the parties intended to include in the quoted prices. Thus, the intent of the parties on this issue must be determined by extrinsic evidence and triable issues of fact are

present, precluding summary judgment (*see, Kane Mfg. Corp. v Partridge*, 144 AD2d 340, 341; *Mayland v Craighead*, 144 AD2d 344, 346; *see also, Conopco, Inc. v Wathne, Ltd.*, 190 AD2d 587, *supra*).

Turning to defendant's cross motion to compel discovery, we note that Supreme Court is vested with broad discretion over the supervision of disclosure (*see, Nutting v Ford Motor Co.*, 189 AD2d 1086, 1087). Here, we find no abuse of discretion by the court. In so doing, we note that the court did not deny defendant's discovery requests but rather only required the parties to schedule a preliminary conference to resolve the outstanding issues of discovery. In light of the record before us, it cannot be said that Supreme Court erred in its determination. We reach this conclusion even in light of our determination that the requested materials do not support defendant's claims of fraud since the materials may be found relevant to the issues which remain in dispute.

Mercure, White, Peters and Spain, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied plaintiff's motion for summary judgment on the first two causes of action; motion granted to that extent and plaintiff is awarded partial summary judgment on said causes of action; and, as so modified, affirmed.