■ In the Matter of ROSE BB. RICHARD BB., Respondent; LOUIS BB., Appellant. STEVEN I. GOTTLIEB et al., Appellants.

[692 NYS2d 237] —Cardona, P. J. Appeal from an order of the Supreme Court (Connor, J.), entered November 5, 1997 in Ulster County, which, *inter alia*, granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 81, to impose a constructive trust on respondent's property and impose costs upon respondent's counsel.

Petitioner commenced a Mental Hygiene Law article 81 proceeding in 1994 to have a guardian appointed to manage the affairs of his mother, Rose BB. Respondent, petitioner's brother, who resided with Rose in her home and managed her affairs pursuant to a power of attorney executed in 1985, opposed the petition and cross-petitioned for his appointment as guardian. At that time, petitioner and respondent were co-trustees along with their mother of a trust created in 1980. Following a trial, Supreme Court appointed James Benson as guardian.[1]

In June 1996, petitioner and Benson (hereinafter the guardian) sought removal of respondent as trustee and the guardian applied to be substituted as trustee in his place. On September 25, 1996, Supreme Court summarily granted all of that relief. The court also ordered respondent to cooperate with the guardian by submitting a "full and complete fiduciary accounting" of his management of his mother's finances from 1980 to the present, with particular emphasis on certain transfers of funds to his personal account in the amounts of $57,000 and $200,000, as well as all tax returns made or filed on behalf of Rose during such period and all purported wills of Rose in respondent's possession. On appeal, we reversed that September 25, 1996 order (entered October 1, 1996) (*see, Matter of Rose BB.*, 243 AD2d 999).

On October 24, 1997, approximately one week prior to that reversal, Supreme Court issued the order which is the subject of this appeal. That order, *inter alia*, imposed a constructive trust upon all of respondent's real and personal property except for property required to meet respondent's living expenses until he complied with the court's order of September 25, 1996. The order appealed from also imposed costs totaling $10,000 upon respondent's counsel pursuant to 22 NYCRR 130-1.1 as reimbursement to petitioner and the guardian. Respondent and his counsel appeal.

Initially, we find that reversal of the September 25, 1996 or-

---

1. In January 1998, we dismissed the appeal from this order finding that Rose's death on December 22, 1996 "rendered moot the issues pertaining to the appointment and selection of the general guardian" (*Matter of Rose BB.*, 246 AD2d 820, 821).

der eliminated the underlying grounds for the imposition of the constructive trust. Accordingly, that issue has been rendered moot.

Turning to Supreme Court's imposition of costs "in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct" (22 NYCRR 130-1.1 [a]) against respondent's law firm, we note that respondent's counsel was not afforded a reasonable opportunity to be heard in opposition to the application (*see*, 22 NYCRR 130-1.1 [d]; *Breslaw v Breslaw*, 209 AD2d 662, 663; *Hendrickson v Saratoga Harness Racing*, 170 AD2d 719). Additionally, Supreme Court failed to set forth in its written decision the reasons why, in each instance, it found the amount of $5,000 to be appropriate (*see*, 22 NYCRR 130-1.2; *McCue v McCue*, 225 AD2d 975, 979). Therefore, we must reverse the imposition of the counsel fees and expenses and remit that issue to Supreme Court.

Next, inasmuch as the guardian commenced a separate proceeding to discover property allegedly withheld by respondent (*see*, Mental Hygiene Law § 81.44) prior to Rose's death, we find that Supreme Court did not abuse its discretion in authorizing the guardian to prosecute that matter rather than discharging him. The death of an incapacitated person does not require a guardian's immediate discharge (*see*, Mental Hygiene Law § 81.36 [a] [3]; *Matter of Siracusano*, 167 Misc 2d 130) particularly where, as here, there is a dispute regarding the preservation of the incapacitated person's property pending distribution through Surrogate's Court.

We now address the question of whether the Mental Hygiene Law article 81 proceedings should be transferred to Surrogate's Court. Clearly, the determination of the issues involved in the Mental Hygiene Law article 81 proceedings will affect the administration of Rose's estate in Surrogate's Court where the parties have petitioned for letters testamentary and letters of administration. We note that the role of the Mental Hygiene Law article 81 guardian is not unlike that of a temporary administrator in Surrogate's Court (*see*, SCPA 903 [1]). We also note the extensive powers of Surrogate's Court to protect "the rights of all persons who may have an interest in the estate of the decedent" (SCPA 1412 [4] [a]). Cognizant that Surrogate's Court must ultimately determine distribution of Rose's estate and desirous of expediting the resolution of these matters, we find that the administration of justice will be better served by transferring the Mental Hygiene Law article 81 proceedings to Surrogate's Court (*see*, NY Const, art VI, § 19

[a]; *Nichols v Kruger*, 113 AD2d 878). Any further action in reference to those proceedings will be determined by that court, which is in the best position to make such a determination, in light of the impending will contest. Toward that end, we reverse Supreme Court's order which temporarily restrains prosecution of the Surrogate's Court proceedings.[2]

Mikoll, Crew III, Yesawich Jr. and Graffeo, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as imposed a constructive trust upon respondent's real and personal property and imposed costs upon the law firm of Moran and Gottlieb in the amount of $10,000; temporary restraining order (Bradley, J.) dated March 27, 1997 reversed and matter remitted to the Supreme Court for (1) further proceedings on the imposition of costs not inconsistent with this Court's decision, and (2) execution and entry of an order transferring the remainder of the proceedings under Index Nos. 94-2809 and 96-3219 to the Surrogate's Court of Ulster County and, as so modified, affirmed.

---

2.  That restraining order was contained in an order to show cause signed by Supreme Court Justice Vincent Bradley on March 27, 1997 and returnable on April 26, 1997 before Justice John Connor. The object of this motion brought by petitioner was to enjoin respondent from seeking modification of orders previously made by Justice Connor, through applications to other courts of coordinate jurisdiction. The order to show cause dated March 27, 1997 was one of many pending motions disposed of by the issuance of the order appealed from.