■ In the Matter of the Estate of ROSE BB., Deceased. RICHARD BB., Respondent; LOUIS BB., Appellant. (And Another Related Proceeding.) [752 NYS2d 142] —Cardona, P.J. Appeal from an order of the Surrogate's Court of Ulster County (Lalor, S.), entered May 17, 2001, which, inter alia, granted petitioner's motion for specific performance of a settlement stipulation regarding the execution of quitclaim deeds and completion of certain monetary payments associated with decedent's estate.

Following the death of the parties' mother, Rose BB. (hereinafter decedent), this Court transferred an ongoing Mental Hygiene Law article 81 proceeding pending in Supreme Court (*see Matter of Rose BB.*, 246 AD2d 820; *Matter of Rose BB.*, 243 AD2d 999) to Surrogate's Court, where a separate petition had been filed for testamentary letters and letters of administration (*see Matter of Rose BB.*, 262 AD2d 805, *lv dismissed* 93 NY2d 1039). On August 2, 2000, petitioner and respondent, both represented by counsel, entered into a stipulation in open court settling both proceedings and all matters relating to the administration of decedent's estate. The settlement, inter alia, sought to quiet title to specific parcels of real property owned by decedent's trust, as well as other unidentified parcels of land held in the parties' names. The quitclaim deeds were to include mutual nondisturbance covenants. The stipulation also included a direction that the parties serve as coadministrators of decedent's estate, ordered respondent to pay a monetary sum to petitioner, and purported to waive all claims between the parties.

Subsequently, petitioner's law firm supplied respondent with copies of the proposed quitclaim deeds. In December 2000, the parties appeared before Surrogate's Court, whereupon respondent's counsel expressed dissatisfaction with the proposed deeds and offered an alternative set of quitclaim deeds. The matter was adjourned for review by a title company, which later opined that respondent's deeds were deficient. On January 31, 2001, the parties appeared in court, whereupon, according to petitioner's March 16, 2001 letter, respondent's problems with the original proposed quitclaim deeds were resolved "by agreeing in open court to replace the non-disturbance language then in [petitioner's deeds] with that contained in the August 2, 2000 Settlement Stipulation." The revised deeds were then sent to respondent in February 2001 and petitioner allegedly supplied the appropriate transfer tax forms soon thereafter. A letter from respondent's counsel to petitioner's counsel, dated

March 13, 2001, included the executed quitclaim deeds relating to decedent's trust. With respect to the remaining "nontrust" quitclaim deeds, however, the letter indicated that respondent considered the alternative deeds supplied by him on January 31, 2001 to be sufficient to meet his obligations under the stipulation and, therefore, petitioner was requested to execute those documents.

Thereafter, in May 2001, petitioner made a motion in Surrogate's Court seeking specific performance of the settlement stipulation mandating, inter alia, that respondent execute the nontrust quitclaim deeds in the form agreed to at the January 31, 2001 court conference or, alternatively, permitting Sheriff's deeds to be utilized. Petitioner also sought respondent's removal as coadministrator of decedent's estate. Surrogate's Court found that respondent's alternative deeds were insufficient by failing to "conform to the requirements of the stipulation and the post-settlement, in-chambers agreement of the parties." The court directed respondent to execute the quitclaim deeds and tax documents necessary for recording the deeds supplied by petitioner and complete the money payments required by the stipulation. The court also removed respondent as coadministrator.

Initially, we are unpersuaded by respondent's argument on this appeal that the settlement stipulation is fatally flawed and unenforceable. "Courts favor stipulations of settlement and will not lightly set them aside, particularly when they are entered in open court" (*Springer v Winney*, 295 AD2d 845, 846; *see* CPLR 2104; *Hallock v State of New York*, 64 NY2d 224, 230; *French v Quinn*, 243 AD2d 792, 793, *lv dismissed* 91 NY2d 1002; *Robison v Borelli*, 239 AD2d 656, 657). A party will be relieved from compliance with an in-court stipulation only when fraud, collusion, mistake or accident is established (*see Springer v Winney*, *supra*; *Stefanovich v Boisvert*, 271 AD2d 727, 728). In the absence of such grounds, stipulations should be strictly enforced (*see Furgang v Epstein*, 106 AD2d 609).

Here, despite respondent's claims that the stipulation is vague because the nontrust properties are not specifically identified, it is evident that an agreement as to those parcels existed by respondent's own submission of competing quitclaim deeds relating to the same properties at the December 2000 court conference. Notably, "[i]n determining whether a party entered into a binding contract, courts eschew the subjective and look to objective manifestations of intent as established by 'words *and deeds*'" (*Ahlstrom Mach. v Associated Airfreight*, 272 AD2d 739, 741, quoting *Brown Bros. Elec. Contrs. v Beam*

*Constr. Corp.*, 41 NY2d 397, 399 [emphasis added]). Significantly, respondent has acted as though the terms of the settlement were both clear and mandatory. This is evidenced by the March 13, 2001 letter sent by his attorney stating: "It is my understanding that the stipulation of settlement required both brothers to execute quit claim deeds in recordable form so that each brother could release any claim to those parcels which were owned by the other." By his actions, respondent has "acquiesced in, consented to, and is bound by the stipulation of settlement" (*Matter of Parkside Ltd. Liab. Co.*, 294 AD2d 582, 584; *see Hallock v State of New York, supra* at 231). Accordingly, inasmuch as respondent failed to set forth sufficient grounds to set aside the settlement agreement, he was properly found to be bound by it (*see French v Quinn, supra* at 793).

Finally, we have reviewed respondent's argument that it was error for Surrogate's Court to remove him as coadministrator without a hearing. Although a hearing is generally required, the record demonstrates that the court was very familiar with the parties and the issues herein and properly reviewed the record of this case to reach its determination that respondent failed to follow the terms of the settlement. Respondent received adequate opportunities to be heard regarding his fitness or lack thereof for the position of coadministrator. Under the unique circumstances herein, we find that Surrogate's Court had an adequate factual basis supporting its decision. Therefore, we find no reason to intervene in the court's discretionary determination regarding respondent's removal (*see Matter of Garett YY.*, 258 AD2d 702, 703).

The remaining arguments raised by the parties have been examined and found to be unpersuasive.

Peters, Spain, Mugglin and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.