■ Nancy G. Repeti, as Executor of Lily Ajemian, Deceased, Respondent, v McDonald's Corporation, Appellant, et al., Defendant. [855 NYS2d 281]—

Spain, J.

In May 2003, Lily Ajemian was injured when a pair of handicap-accessible, electrically operated doors at the entrance of the Malden rest area in Ulster County allegedly closed suddenly and struck her from behind. The Malden facility is owned by nonparty State Thruway Authority, which leases the property to defendant McDonald's Corporation (hereinafter defendant). Magliocca Stores, Inc.—also a nonparty—is a franchisee of defendant and operates the McDonald's food service restaurant at the Malden rest area. Ajemian commenced this personal injury action against defendant and defendant Stanley Access Technologies, the purported manufacturer and installer of the doors.* Defendant and Stanley each moved for summary judgment dismissing the complaint. Supreme Court denied both motions. Defendant appeals, claiming that, as a matter of law, it owed no duty to Ajemian.

We affirm. "[T]o prevail on its motion, defendant 'must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case' " (*Webster v Town of Saugerties*, 25 AD3d 861, 862 [2006], quoting *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Manculich v Dependable Auto Sales & Serv., Inc.*, 39 AD3d 1070, 1071 [2007]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d at 853 [citations omitted]). We hold that defendant has failed to make a prima facie case which would entitle it to judgment as a matter of law.

First, defendant claims that it owes no duty to Ajemian, a public user of the facility, as lessee of the premises, by virtue of its franchise agreement with Magliocca. "In determining whether defendant, as franchisor, may be held vicariously liable for the acts of . . . its franchisee, the most significant factor . . . is the degree of control that the franchisor maintains over the daily operations of the franchisee or, more specifically, the 'manner of performing the very work in the course of which the accident occurred' " (*Hart v Marriott Intl.*, 304 AD2d 1057, 1058 [2003], quoting *Andreula v Steinway Baraqafood Corp.*, 243 AD2d 596, 596 [1997]; *see Henness v Lusins*, 229 AD2d 873, 873-874 [1996] ["An out-of-possession landlord is generally not

---

* Upon Ajemian's death, which occurred subsequent to the order appealed from, Supreme Court ordered the substitution of the executor of her estate as plaintiff.

responsible for the maintenance or repair of leased premises; however, one who retains control of the premises or contracts to repair or maintain the property may be liable for defects"]).

Here, defendant has tendered insufficient evidence to establish, as a matter of law, that it lacked control over the doors which allegedly caused Ajemian's injuries. Notably, defendant failed to include the franchise agreement in its papers (cf. *Hart v Marriott Intl.*, 304 AD2d at 1058-1059). Although evidence exists that Magliocca's employees maintain the cleanliness of the doors and report operational defects directly to the Authority, deposition testimony also establishes that routine daily inspections by Magliocca managers addressing "issues of sanitation . . . maintenance, [and] safety" are done pursuant to protocols established by *both* Magliocca and defendant. Thus, we cannot say, as a matter of law on this record, that defendant lacked the requisite control over the facility to form the basis of a duty to the public users of the rest area (see *Mountain Candy & Cigar Co. v Dairy Mart Convenience Stores*, 267 AD2d 570, 570-571 [1999]).

Next, defendant asserts that its lease agreement with the Authority conclusively establishes that neither it nor its franchisee, Magliocca, had any duty or authority to maintain the doors. The lease contract between defendant and the Authority states that, "the AUTHORITY shall maintain, repair and replace . . . the building structural shell, including . . . exterior doors and frames," and "[defendant] shall maintain and repair . . . all fixtures and improvements, including . . . interior doors." The contract further provides that the "lobby" includes the "vestibule," which is apparently the area that divides the two sets of entrance doors. It is at least arguable that the inner set of doors, which define the inner boundary of the vestibule, are part of the "interior" of the building. Although substantial evidence exists that the Authority in fact maintained the doors in question and that only the Authority and Stanley were qualified or authorized to perform such maintenance, on this record we cannot determine, as a matter of law, whether the inner set of doors are "interior" or "exterior" doors and, thus, which entity had responsibility pursuant to the lease contract for their maintenance and repair (see *Vander Veer v Henderson*, 267 AD2d 584, 585 [1999]; *Downey v R.W. Garraghan, Inc.*, 198 AD2d 570, 571 [1993]; see also *Santiago v Pyramid Crossgates Co.*, 294 AD2d 789, 790 [2002]; cf. *Zadarosni v F. & W. Restauranteurs of Southeast*, 192 AD2d 1051, 1052 [1993]).

Mercure, J.P., Peters, Lahtinen and Malone Jr., JJ., concur. Ordered that the order is affirmed, with costs.