■ BRIGHTON INVESTMENT, LTD., Appellant, v RONEN HAR-ZVI, Respondent. [932 NYS2d 214]—

Garry, J.

In 2004, plaintiff, a foreign corporation, and defendant, a securities and derivatives trader residing in the City of Saratoga Springs, Saratoga County, reached an agreement by which defendant invested plaintiff's funds. The agreement was memorialized in a memorandum of understanding (hereinafter the 2004 MOU) signed by defendant and Eldad Levy, plaintiff's representative. In early 2005, plaintiff advised that it wished to withdraw the funds. In response, defendant proposed an alternate investment plan, by which defendant would guarantee the full return of plaintiff's original investment, plus 50% of any growth, if plaintiff would continue the investment until June 2006. After an exchange of e-mails discussing details, Levy e-mailed defendant a new memorandum of understanding (hereinafter the 2005 MOU) setting forth the terms of the proposal. Defendant never provided plaintiff with a signed copy of this document, but in June 2005, he advised Levy by e-mail, "draft is signed, will officaly [sic] sign and fax it when have power to do so, BUT signed!, my word must still be worth a bit." In June 2006, Levy sought return of the initial investment from defendant, and defendant thereafter wired a lesser sum. In subsequent e-mail correspondence, Levy insisted that the full sum initially invested was due, while defendant responded, in effect, that he could not afford to pay that amount, but had instead sent an amount reflecting a high point in the investment's recent performance.

In January 2008, plaintiff commenced this action alleging breach of contract, conversion, unjust enrichment and breach of fiduciary duty. Defendant answered with counterclaims, and plaintiff moved to dismiss the counterclaims. After Supreme Court granted plaintiff's motion in part, plaintiff moved for summary judgment, and defendant cross-moved for summary judgment dismissing the complaint. Supreme Court denied both motions.

Plaintiff appeals, contending that Supreme Court erred in denying its motion for summary judgment on its breach of contract claim. This claim requires proof that a contract was formed, plaintiff performed its obligations, defendant failed to do so, and plaintiff was damaged as a result (see Clearmont Prop., LLC v Eisner, 58 AD3d 1052, 1055 [2009]). The issue in dispute is whether, after entering into the 2004 MOU, the parties formed a new contract. Plaintiff contends that despite its inability to produce an executed copy of the 2005 MOU, the existence of an enforceable contract is established by the e-mail exchange between Levy and defendant and by the parties' subsequent course of conduct. In this regard, plaintiff notes

that in e-mails after June 2005, Levy repeatedly mentioned his expectation that the full initial investment would be paid in June 2006, and defendant never denied that he had so agreed, even when explaining his reasons for paying the lesser amount. Defendant asserted in opposition that he never signed the 2005 MOU or intended to agree to its terms, and that his June 2005 statement that he had signed a draft pertained to a different business venture in which he, Levy, and two other individuals were involved. Supreme Court determined that defendant's June 2005 e-mail was too equivocal to constitute an unconditional acceptance of the 2005 MOU, and that there were triable issues of fact as to whether defendant signed the document.

Whether a contract has been formed does not depend on either party's subjective intent; instead, the determination must be based on "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds" (*Brown Bros. Elec. Contrs. v Beam Constr. Corp.*, 41 NY2d 397, 399 [1977]; *see Matter of Rose BB.*, 300 AD2d 868, 869-870 [2002]; *Keis Distrib. v Northern Distrib. Co.*, 226 AD2d 967, 968-969 [1996]). An unsigned contract may be enforceable when objective evidence establishes that the parties intended to be bound (*see Flores v Lower E. Side Serv. Ctr., Inc.*, 4 NY3d 363, 369 [2005]), and an exchange of e-mails may constitute an enforceable contract, even if a party subsequently fails to sign implementing documents, when the communications are "sufficiently clear and concrete" to establish such an intent (*Williamson v Delsener*, 59 AD3d 291, 291 [2009]; *see Newmark & Co. Real Estate Inc. v 2615 E. 17 St. Realty LLC*, 80 AD3d 476, 477-478 [2011]; *see also Stevens v Publicis S.A.*, 50 AD3d 253, 255-256 [2008], *lv dismissed* 10 NY3d 930 [2008]). Thus, resolution of this dispute does not necessarily depend on whether defendant actually signed some version of the 2005 MOU or on any other "single act, phrase or other expression," but on whether the parties' words and deeds establish their intent to enter into a binding agreement "given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain" (*Brown Bros. Elec. Contrs. v Beam Constr. Corp.*, 41 NY2d at 400).

Plaintiff's submissions did not establish a prima facie case sufficient to support summary judgment (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Repeti v McDonald's Corp.*, 49 AD3d 1089, 1090 [2008]). When a written instrument is free from ambiguity, a court may decide the question of intent as a matter of law, but where, as here, the written language is ambiguous and cannot be interpreted without resort

to extrinsic evidence, the parties' intent must be decided by the factfinder (*see Brown Bros. Elec. Contrs. v Beam Constr. Corp.*, 41 NY2d at 400; *Keis Distrib. v Northern Distrib. Co.*, 226 AD2d at 968). In their e-mail communications, Levy and defendant discussed multiple business deals using a telegraphic style and irregular syntax that cannot readily be understood without explanatory extrinsic information. Levy's June 2005 e-mail advising defendant, "I have not received my agreement with you, not going to ask for it again," did not clearly reference the 2005 MOU, nor did defendant's responding message. Both of these communications were embedded in discussions of other business transactions. Moreover, an ambiguity as to whether the parties intended to be bound by the 2005 MOU before it was formally signed (*see Scheck v Francis*, 26 NY2d 466, 469-470 [1970]; *Granger v Schachenmayr*, 49 AD3d 1079, 1081 [2008]; *Venture Mfg. [Singapore] v Matco Group*, 6 AD3d 850, 851 [2004]) was created by defendant's initial proposal to Levy that they should sign a new memorandum of understanding if they agreed upon the modification, Levy's inclusion of signature blanks in the 2005 MOU, and defendant's cryptic June 2005 communication that, in addition to signing a draft, he would officially sign and fax the 2005 MOU when he "[had] power to do so." Given this lack of clarity in the parties' written communications, their intent must be determined by assessing whether the totality of the circumstances, including their course of conduct after June 2005, consistently indicated their mutual belief that an agreement had been reached (*see Brown Bros. Elec. Contrs. v Beam Constr. Corp.*, 41 NY2d at 399; *Richmor Aviation, Inc. v Sportsflight Air, Inc.*, 82 AD3d 1423, 1424-1425 [2011]; *United States Fid. & Guar. Co. v Delmar Dev. Partners, LLC*, 14 AD3d 836, 838 [2005]). This determination depends on assessments of credibility and inferences to be drawn from the conflicting evidence, and so must be made by the trier of fact (*see Pozament Corp. v AES Westover, LLC*, 27 AD3d 1000, 1001-1002 [2006]; *compare Ahlstrom Mach. v Associated Airfreight*, 272 AD2d 739, 741 [2000]).

However, we agree with plaintiff that it is entitled to summary judgment dismissing the real party in interest defense. "A contracting party generally has a right to maintain an action in its own name" (*Airlines Reporting Corp. v Pro Travel*, 239 AD2d 233, 234 [1997]; *see* CPLR 1004). Both the 2004 MOU and the 2005 MOU identify plaintiff as the contracting party, defendant dealt with Levy in relation to plaintiff's investment without questioning his authority to act on plaintiff's behalf, and any recovery resulting from this action will be paid to plaintiff. Supreme Court thus properly found that this defense lacks merit

(*see Fairchild Hiller Corp. v McDonnell Douglas Corp.*, 28 NY2d 325, 330-331 [1971]; *James McKinney & Son v Lake Placid 1980 Olympic Games*, 92 AD2d 991, 992-993 [1983], *mod* 61 NY2d 836 [1984]) and, upon denying defendant's cross motion, could have searched the record to grant judgment to plaintiff on this issue (*see* CPLR 3212 [b]; Siegel, NY Prac § 282, at 466-467 [4th ed]). This Court may also exercise that power (*see Shields v Carbone*, 78 AD3d 1440, 1443 n 2 [2010]; *Schultes v Kane*, 50 AD3d 1277, 1278 [2008]). We conclude that plaintiff is entitled to partial summary judgment dismissing this affirmative defense.

Peters, J.P., Rose, Lahtinen and McCarthy, JJ., concur. Ordered that the order is modified, on the law, without costs, by granting summary judgment to plaintiff dismissing defendant's real party in interest affirmative defense, and, as so modified, affirmed.