OPINION OF THE COURT
Acosta, J.
The primary issue in this case is whether plaintiff, which submitted a timely application to compete in the upcoming America’s Cup sailing regatta and was rejected, sufficiently pleaded a breach of contract claim to survive a CPLR 3211 motion to dismiss. Although defendant, the current trustee of the trophy, has discretion in selecting the defender, we find that plaintiff has alleged the existence of an enforceable contract between the parties and bad faith on defendant’s part sufficiently to state a breach of contract cause of action. Contrary to the dissent’s position, given the rules of the race, submission of an entry application with the appropriate fee binds defendant to review the application in good faith, and its failure to do so is a breach of contract. Whether plaintiff can ultimately establish its claim is irrelevant at this juncture since the sole consideration on a CPLR 3211 motion is whether the complaint sufficiently states a cause of action.
The America’s Cup is governed by a Deed of Gift. The Deed of Gift is a trust instrument executed under the laws of New York State. The corpus of the trust is the well-recognized trophy, simple possession of which spurs the sailing competition.
Since the 1970s, the America’s Cup has allowed boats from multiple nations to participate in America’s Cup events. A formal, initial “Challenger” triggers each competition for the Cup. In accordance with the Deed of Gift, the winner of the preceding competition (the Defender) and the Challenger must agree on rules, i.e., a protocol, for the next competition. Accordingly, defendant, Golden Gate Yacht Club (GGYC), the winner of the 33rd America’s Cup held February 14, 2010, and the nonparty Club Náutico di Roma (CNR), the Challenger, agreed on “The Protocol Governing the 34th America’s Cup” (the Protocol). Pursuant to the Protocol, additional participants from countries other than the country that holds the Cup are candidates for “Challenger”; additional participants from the country that possesses the cup are called “Defender Candidates.” Challenger candidates, as well as the Challenger, must engage in an elimination series called the “Louis Vuitton Cup” to determine which single boat, from a single foreign country, may vie to compete against the Defender for the Cup. Similarly, *207 Defender candidates, potentially including the last winner of the Cup, may (but are not required to) have their own elimination series to determine which organization’s boat will represent the Defender’s interest in a scheduled America’s Cup event. “Defender Candidate” is defined as “a team selected by GGYC to participate in the America’s Cup Defender Series, if any.” Pursuant to the Deed of Gift, the Protocol states that the holder of the Cup (i.e., GGYC) acts as “trustee” in managing the Cup event, and must “act in the best interests of all Competitors collectively” and “not unreasonably favor the interests of any Competitor over another. ”
Plaintiff African Diaspora Maritime Corporation (ADM), a sailing organization based in North Carolina, alleges that on or about July 7, 2010, it contacted GGYC to inquire about applying to become a Defender Candidate in the 34th Cup. ADM was allegedly instructed by GGYC to contact the chairman of the America’s Cup Committee, Tom Ehman. ADM claims that GGYC had already formed a “Competitor Forum” (for the purpose, as defined in the Protocol, of “consultation and communication with Competitors”) and could have put ADM in contact with its liaison to the Competitor Forum, Anthony Romano. Instead, ADM claims that between July 8, 2010 and March 26, 2011, it contacted GGYC, through Ehman, on a monthly basis, seeking information about becoming a Defender Candidate. ADM alleges that GGYC exhibited a pattern of continuing avoidance, providing it with little information until it was almost too late for ADM to enter the 34th Cup as a Defender Candidate. On March 26, 2011, GGYC referred ADM to Romano, and Romano provided ADM with information critical to its application, which allegedly had been made available to the Competitor Forum months earlier.
On March 31, 2011, just one day before the deadline, ADM was able to submit an application to be considered as a Defender Candidate for the 34th Cup. Along with its application, ADM paid the required $25,000 fee.
The Defender Application states in relevant part:
“(2) The Defender Candidate by this Notice hereby challenges for the 34th America’s Cup in accordance with the Protocol Governing the 34th America’s Cup dated 31 August 2010 as amended. The Defender Candidate hereby agrees to be bound by and undertakes to comply with the terms of the said Protocol *208 and all other rules set forth in its Article 11, and any amendments to the Protocol or those rules.
“(3) Details of the Defender Candidate’s corporate structure, registered business address and team management. We agree to provide further details of our challenge as GGYC may request to review and consider this application.”
In paragraph (4) the Defender Application provides in relevant part that the Defender Candidate is bound by the terms of the Deed of Gift, the Protocol, and documents that are noted in Article 11 of the Protocol.
Article 8 of the Protocol, called “Acceptance of Defender Candidates,” provides:
“8.1 GGYC will accept applications to be a Defender Candidate from 1 November 2010 until 31 March 2011. There after, applications may be accepted at the discretion of GGYC upon such terms as it may determine.
“8.2 Defender Candidates shall comply with the Protocol and shall submit the documents and fees as set out in Article 9.
“8.3 GGYC will review Defender Candidate applications and will accept those it is satisfied have the necessary resources (including but not limited to financial, human, and technological) and experience to have a reasonable chance of winning the America’s Cup Defender Series.”
ADM alleges that from April 1, 2011 through April 15, 2011, GGYC falsely and repeatedly claimed that its application was deficient due to the lack of a signature and the lack of a document that evidenced payment of the $25,000 fee.
ADM alleges that it met all other application requirements, inasmuch as it had, inter alia: (1) assembled a qualified sailing team; (2) secured the services of a renowned boat designer (Dave Pedrick); (3) lined up commitments of “several wealthy African-Americans” to fund ADM’s pursuit of a defender opportunity; (4) organized “a plan” with North Carolina’s Secretary of Commerce and the State’s Department of Tourism “to build a ‘boat park’ in Raleigh”; and (5) had “detailed plans ... to create a media frenzy around its team (for both publicity and fundraising efforts).” As for its sailing team, ADM alleges that it included “three Olympians, an All-American, [and] several ad *209 ditional talented, experienced, and award-winning sailors.” Further, ADM alleges that other “world class African-American sailors intended to join ADM’s campaign” if “GGYC accept[ed] ADM as a Defender Candidate.” ADM alleges that Pedrick is “an America’s Cup award-winning yacht designer.”
ADM further alleges that GGYC informed it that since ADM did not have a contract with Pedrick (Pedrick had conditioned his participation with ADM on ADM’s obtaining Defender Candidate status), the information in its application was not accurate. ADM alleges that GGYC’s objections to its application were “technical objections” that were “groundless.” For instance, ADM alleges, GGYC “twist[ed]” Pedrick’s statement that he had a conditional arrangement with ADM to mean that Pedrick had “denied” his association with ADM. ADM alleges that emails from Pedrick to ADM, as well as an April 15, 2011 email from Pedrick to GGYC, establish Pedrick’s intent to design for ADM.
By letter dated April 15, 2011, GGYC advised ADM that its application had been rejected. According to ADM, GGYC’s stated reason was that it was “not satisfied that ADM has, or will have the necessary resources (including but not limited to financial, human, and technological) and experience to have a reasonable chance of winning the America’s Cup Defender Series.”
In December 2011, ADM commenced this action against GGYC alleging three causes of action: (1) breach of contract; (2) breach of trust; and (3) breach of fiduciary duty. With respect to the breach of contract claim, the complaint alleges that a contract was formed between ADM and GGYC when ADM accepted GGYC’s offer/invitation to participate as a Defender Candidate. ADM asserts that its submission to GGYC of a completed Defender Candidate application, together with the $25,000 required under the Protocol, constituted an acceptance of the Defender Candidate offer, and that GGYC’s failure to review the application in good faith breached the contract.
ADM alleges that GGYC had no basis to claim a lack of “satisfaction” with its application, since ADM stated that it would provide further details upon request, and GGYC never attempted to verify the status of ADM’s team, its proposed funding sources, or its proposed team’s experience. ADM alleges that GGYC knew that potential competitors typically do not draw funding until they are granted competitor status. ADM also alleges that GGYC had provided material and financial help to *210 some struggling competitors, such as yachts or design packages, but not to all competitors, thus breaching its duty to treat all competitors equally. ADM seeks compensatory damages and numerous forms of equitable relief, including an order directing GGYC to accept its application.
In May 2012, GGYC moved to dismiss the complaint pursuant to CPLR 3211 (a) (1), (3) and (7), arguing, inter alia, that the complaint fails to state a cause of action.
As to the breach of contract claim, GGYC argued that the Protocol was a binding agreement between the Challenger (CNR) and itself only. At best, GGYC contended, the Protocol could be construed as a solicitation of bids, which, under New York law, would make a potential candidate’s application the equivalent of an offer to participate in the Defender Series. Even assuming, arguendo, the existence of a binding contract between itself and ADM under the terms of the Protocol, GGYC further argued, ADM failed to show how it breached the terms of the Protocol in relation to ADM, since the Protocol expressly affords GGYC unfettered discretion to decide if an applicant meets the qualifications to compete. GGYC also argued that it gave ADM more than a fair opportunity to demonstrate its capacity to assemble a competitive, financially backed team that could compete in a Defender Series. GGYC stated that ADM did not allege that a proposed team member of ADM had ever competed in an America’s Cup or that the ADM team had ever competed together on the same boat in a regatta. By contrast, GGYC noted, among the potential defenders for the 34th Cup, is Team Oracle, the victor in the 33rd Cup. Thus, GGYC argued, ADM’s allegations failed to establish that its rejection of ADM’s application was not reasonable and not in good faith. GGYC also argued that ADM failed to allege damages arising from a purported breach of contract, since, even if its application were accepted (based on an alleged contract), there was no guarantee that ADM would be selected as a Defender Candidate or that it would prevail in a Defender Series and win the 34th Cup.
ADM opposed the motion, arguing, inter alia, that it stated a contract claim by alleging that it accepted the offer in the Protocol for defender applications and submitted a completed application and the requisite $25,000 fee. ADM argued that it did not have to allege that but for GGYC’s wrongful rejection of its application it would have made a successful bid for the 34th Cup, and therefore was damaged, since GGYC’s deprivation of its opportunity to compete constitutes compensable harm in and of itself.
*211 By order entered January 18, 2013, the motion court dismissed the complaint in its entirety, with prejudice (38 Misc 3d 1214[A], 2013 NY Slip Op 50099[U] [2013]). Since we find that ADM stated a breach of contract claim, we modify the order to reinstate that claim.
The sole criterion for deciding a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7), “is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail” (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). As the Court of Appeals instructed in 511 W. 232nd Owners Corp. v Jennifer Realty Co. (98 NY2d 144, 151-152 [2002]),
“In furtherance of this task, we liberally construe the complaint, and accept as true the facts alleged in the complaint and any submissions in opposition to the dismissal motion. We also accord plaintiffs the benefit of every possible favorable inference. Dismissal under CPLR 3211 (a) (1) is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law” (citations and internal quotation marks omitted).
Indeed, “[w]hether a plaintiff . . . can ultimately establish its allegations is not taken into consideration in determining a motion to dismiss” (Philips S. Beach, LLC v ZC Specialty Ins. Co., 55 AD3d 493, 497 [1st Dept 2008] [emphasis added], lv denied 12 NY3d 713 [2009]).
Here, viewing the alleged facts in the light most favorable to ADM, we find that the complaint states a breach of contract claim so as to avoid dismissal. “[T]he rules of a contest constitute a contract offer and . . . the participant’s [entry into] the contest constitute[s] an acceptance of that offer,” creating a binding contract (Sargent v New York Daily News, L.P., 42 AD3d 491, 493 [2d Dept 2007] [internal quotation marks omitted]; see also Robertson v United States, 343 US 711, 713 [1952] [contestant’s acceptance of the contest sponsor’s offer to compete in a symphonic works contest created an enforceable contract]).
Articles 8 and 9 of the Protocol set forth the procedure for applying to become a Defender Candidate in “definite and certain” detail by specifying the dates during which applications will be accepted and the required documentation and ap *212 plication fee, and Schedule Two to the Protocol provides applicants for Defender Candidate (“Defender Applicants”) with the exact language that should be used in their applications (see Keis Distrib. v Northern Distrib. Co., 226 AD2d 967, 969 [3d Dept 1996] [internal quotation marks omitted]; see also Caride v Alonso, 78 AD3d 466, 467 [1st Dept 2010], lv dismissed in part, denied in part 16 NY3d 806 [2011]). Thus, the Protocol constituted an offer.
The duties that GGYC offered to undertake to an applicant that submitted the prescribed application along with the $25,000 fee were also definite and certain. GGYC agreed to “review” the application and to accept the applicant as a Defender Candidate if it was “satisfied” that the applicant had a “reasonable chance of winning” the America’s Cup Defender Series. The Protocol’s terms demonstrate GGYC’s unequivocal intent to be bound by those terms.
The dissent attempts to distinguish Sargent (42 AD3d at 491) and Robertson (343 US at 711) by noting that in those cases the plaintiffs had already won, while in the present case, “the applicant must first be approved by the Defender [to be qualified] and then participate in a series of yacht races with the objective of winning the America’s Cup Defender Series.” The dissent misses the point. The Protocol in this case creates a mutual obligation between GGYC as trustee and Defender Applicants: a Defender Applicant is obligated to abide by the Protocol and GGYC is obligated to administer the Protocol in good faith (see Curtis Props. Corp. v Greif Cos., 212 AD2d 259, 265-266 [1st Dept 1995] [“courts avoid an interpretation that renders a contract illusory and therefore unenforceable for lack of mutual obligation and prefer to enforce a bargain where the parties have demonstrated an intent to be contractually bound” (citation omitted)]).
ADM accepted GGYC’s offer by timely submitting its “Application of Defense” in the required form along with the required fee, thus creating an enforceable contract (see Robertson, 343 US at 713; see also Kowalchuk v Stroup, 61 AD3d 118, 122 [1st Dept 2009]).
ADM’s acceptance of GGYC’s offer obligated GGYC to review ADM’s application in “good faith” (Dalton v Educational Testing Serv., 87 NY2d 384, 389 [1995] [“Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion”]; see also Peacock v Herald Sq. Loft Corp., 67 AD3d *213 442, 443 [1st Dept 2009] [“Even if the . . . agreement does not, on its face, set limits on the board’s ability to refuse to approve the scope of work, the contract’s implied covenant of good faith and fair dealing would prevent defendants from exercising that power arbitrarily”]; C & E 608 Fifth Ave. Holding, Inc. v Swiss Ctr., Inc., 54 AD3d 587, 588 [1st Dept 2008] [“exercise of an apparently unfettered discretionary contract right breaches the implied obligation of good faith and fair dealing if it frustrates the basic purpose of the agreement and deprives plaintiffs of their rights to its benefits” (internal quotation marks omitted)]). The dissent is correct in noting that our holding gives “expansive scope to Woody Allen’s observation” that “[e]ighty percent of success is showing up.” Success, however, is accomplished in this case by having GGYC, as trustee of the Cup, review properly submitted applications in good faith. Thus, contrary to GGYC’s and the dissent’s contention, the contract did not give it unfettered discretion to reject ADM’s application (see Dalton, 87 NY2d at 389). Rather, GGYC had the discretion to reject applications which in good faith it deemed unsatisfactory. Moreover, whether GGYC acted in good faith is not appropriately decided on a motion to dismiss (see Peacock, 67 AD3d at 443 [“Whether defendants acted arbitrarily or unreasonably . . . presents questions of fact”]).
ADM alleges facts sufficient to raise the question whether GGYC acted in bad faith. Specifically, ADM alleges that: GGYC attempted to sabotage its efforts to submit an Application of Defense by excluding it from the Competitor Forum, thereby preventing it from obtaining information critical to the application; GGYC initially sought to deny ADM’s Application of Defense on various technicalities, including that it was not signed and did not include a document evidencing payment of the $25,000 fee; GGYC falsely asserted that ADM had lied about its proposed team, claiming that Pedrick, ADM’s yacht designer, had denied being a member of ADM’s team; and GGYC falsely claimed that it rejected ADM’s Application of Defense because it was not satisfied that ADM “[would] have the necessary resources” to compete, even though America’s Cup teams do not obtain funding until after their applications are accepted.
We reject GGYC’s argument that the complaint fails to allege damages. ADM does not have to plead that, had its Application been accepted, it would have beaten Team Oracle or won the Cup. Rather, denying ADM fair consideration of its application was harm in and of itself (see Dalton, 87 NY2d at 394 [“Dal *214 ton is entitled to relief that comports with ETS’s contractual promise — good-faith consideration of the material he submitted to ETS”]). As GGYC recognizes, under Dalton, “GGYC would ... be required to consider ADM’s application in good faith.”
The dissent, citing Matter of Poliak v Conway (276 App Div 435, 437 [3rd Dept 1950], Iv denied 301 NY 816 [1950]), notes that an organization “may set such standards for candidates that it deems appropriate” and that courts should decline to interfere in administrative matters. Although that may generally be true, the Deed of Gift has expressly made New York courts the arbiter of its disputes (see Mercury Bay Boating Club v San Diego Yacht Club, 150 AD2d 82 [1st Dept 1989], affd 76 NY2d 256 [1990]; Golden Gate Yacht Club v Société Nautique de Genéve, 55 AD3d 26 [1st Dept 2008], revd 12 NY3d 248 [2009]; Golden Gate Yacht Club v Société Nautique de Genéve, 68 AD3d 552 [1st Dept 2009]), and its Protocol guides this Court in deciding those disputes. In the end, this is a sporting competition, and the winner should be decided in the open waters, rather than in a courtroom. After all, it is not a competition if the defender wins by default (see Norimitsu Onishi, When Billionaire Sets Rules, It’s an Exclusive Race, NY Times, June 4, 2013, § A at 1, col 2). Although plaintiff does not have the right to be deemed a challenger, it is entitled to have its timely submitted application reviewed in good faith.
ADM’s remaining arguments have no merit since it has no basis for asserting a beneficiary interest in the charitable trust (see Aleo Gravure, Inc. v Knapp Found., 64 NY2d 458, 465 [1985]). Nor does it have standing to assert a breach of fiduciary duty claim (see Matter of Rosenthal, 99 AD3d 573 [1st Dept 2012], lv dismissed in part, denied in part 20 NY3d 1058 [2013]).
Accordingly, the order of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered January 18, 2013, which granted defendant’s motion to dismiss the complaint, should be modified, on the law, to deny the motion as to the breach of contract claim, and otherwise affirmed, without costs.