*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: April 2, 2015        519567

_____

COCA-COLA REFRESHMENTS, USA,
   INC., Formerly Known as
   COCA-COLA ENTERPRISES, INC.,
                Respondent,

     v                            MEMORANDUM AND ORDER

BINGHAMTON GIANT MARKETS, INC.,
   Doing Business as BINGHAMTON
   GIANT MARKETS,
                Appellant.

_____

Calendar Date: February 10, 2015

Before: Lahtinen, J.P., Garry, Lynch and Devine, JJ.

_____

    Hinman, Howard & Kattell LLP, Binghamton (Dennis P. Sheehan of counsel), for appellant.

    Ganz Wolkenbreit & Siegfeld, Albany (Matthew M. Zapala of counsel), for respondent.

_____

Garry, J.

    Appeal from an order of the Supreme Court (Cerio Jr., J.), entered October 17, 2013 in Broome County, which, upon renewal, denied defendant's motion for, among other things, summary judgment dismissing the complaint.

    Beginning in the 1930s, defendant operated a chain of grocery stores in Broome County. For approximately 70 years, plaintiff and defendant enjoyed a successful business relationship whereby defendant regularly purchased products from plaintiff to be sold in defendant's stores. However, the parties

never formalized the terms of their relationship in a contract. In August 2009, defendant sold its grocery operations to another company. After defendant tendered its final payment of all amounts due to plaintiff, plaintiff claimed that there was a balance remaining in the sum of approximately $10,000; defendant disagreed and provided documentation and, in February 2010, plaintiff reduced the claimed amount to about $6,000. Thereafter, in July 2010, plaintiff sent a collection letter claiming that the amount owed was approximately $53,000 and, in November 2010, increased the claim to roughly $69,000.

Defendant refused to pay and, in February 2011, plaintiff commenced this action asserting claims for breach of contract and account stated. Defendant moved, as pertinent here, for summary judgment dismissing the complaint, and Supreme Court denied the motion. Following discovery, defendant moved to renew its prior motion. The court granted the motion for renewal, but denied the underlying summary judgment motion. Defendant appeals.

Initially, we agree with defendant that plaintiff's claim for an account stated is without merit. "An account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due" (Whiteman, Osterman & Hanna, LLP v Oppitz, 105 AD3d 1162, 1163 [2013] [internal quotation marks and citations omitted]). Here, it is undisputed that the parties never reached such an agreement. Plaintiff did not oppose defendant's request for dismissal of this claim in Supreme Court and made no related arguments on this appeal. Accordingly, defendant is entitled to summary judgment dismissing this cause of action (see M & A Constr. Corp. v McTague, 21 AD3d 610, 611-612 [2005]; Joe O'Brien Investigations v Zorn, 263 AD2d 812, 815 [1999]).

As for the breach of contract claim, an implied contract exists when the parties have not entered into an express contract, but their course of conduct indicates that they have reached a meeting of the minds that is sufficient to constitute an enforceable contract (see DG & A Mgt. Servs., LLC v Securities Indus. Assn. Compliance & Legal Div., 52 AD3d 922, 923 [2008]; Berlinger v Lisi, 288 AD2d 523, 524 [2001]). A contract may be

implied "as an inference from the facts and circumstances of [a] case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct" (Jemzura v Jemzura, 36 NY2d 496, 503-504 [1975] [internal quotation marks and citations omitted]; see Matter of Pache v Aviation Volunteer Fire Co., 20 AD3d 731, 732-733 [2005], lv denied 6 NY3d 705 [2006]).  Here, the parties agree that they had a longstanding implied contract, but disagree as to whether the terms of this agreement included the amounts that plaintiff now seeks to collect.  Plaintiff asserts that these amounts represent debts resulting from systematic underpayments by defendant dating back to 2006.  However, defendant contends that it was the parties' longstanding practice to resolve payment disputes shortly after each payment came due, and that plaintiff gave defendant no reason to believe that any such disagreements were not resolved or that any charges remained outstanding.

In support of its summary judgment motion, defendant submitted the affidavits and deposition testimony of several executives and employees who participated in the parties' relationship.  This evidence establishes that, for many years, the parties' representatives held weekly meetings in which they agreed upon that week's prices, which were then recorded in defendant's accounting systems.  Upon each delivery, defendant compared its price records to plaintiff's invoices, advised plaintiff of any discrepancies and, when differences existed, paid the lesser of the two amounts pending later reconciliation.  According to both parties, this initial payment of the lesser amount is a standard industry practice.  The parties then corrected any discrepancies through a reconciliation process by which plaintiff provided defendant with monthly statements itemizing current invoices and prior charges that remained in question.  Defendant's accounting personnel investigated discrepancies, annotated the statements to reflect adjustments, and returned the statements to plaintiff with payment.  According to defendant, plaintiff routinely accepted these payments without objection and later removed the charges from its statements, after which defendant believed that any related disputes had been resolved.  Throughout the parties' relationship, plaintiff never sought payment for any charges that had been removed from its statements following this process, never advised defendant that

it believed any such charges remained outstanding, and never informed defendant that it considered any charges to be owed other than those appearing on the monthly statements.  This showing was sufficient to demonstrate on a prima facie basis that the intention of the parties pursuant to their implied contract, as revealed by their conduct (see Jemzura v Jemzura, 36 NY2d at 503-504), was to resolve price disagreements on an ongoing basis based upon the monthly statements and that all such disagreements were resolved.  Accordingly, defendant met its prima facie burden to demonstrate its entitlement to judgment as a matter of law on the breach of contract claim, thus shifting the burden to plaintiff to demonstrate that material issues of fact require a trial.

Plaintiff's claims are based primarily on the testimony of Shaun Harris, a collection process administrator who based his testimony on a record review and had no personal knowledge of the parties' business relationship.  Harris stated that the removal of a charge from plaintiff's monthly statements did not indicate that the charge had been satisfied.  Instead, as a matter of policy, plaintiff permanently removed all charges from its statements nine months after they came due.  Plaintiff then recorded any charges that it believed were still outstanding in a private internal ledger, and now seeks to recover from defendant the charges contained in this ledger.  However, Harris testified that, as a matter of policy, plaintiff never advised defendant — or any other customer — that the ledger existed, nor did it inform defendant that it routinely removed charges from its statements even when it still considered them to be outstanding. Harris claimed that, under plaintiff's general business practice, defendant should have been informed of all outstanding charges through "rebill packages."[1]  However, no records that would confirm whether this occurred now exist, as plaintiff discarded

---

[1]  Logs of communications between the parties' accounting personnel confirm that such rebill packages existed, but do not reveal their contents.  Notably, these logs — which cover several years — include no indication that plaintiff ever advised defendant of a cumulative debt based on past charges or that it believed that defendant was making systematic underpayments.

its copies of the rebill packages when it switched to an electronic record-keeping system.

The only witnesses for plaintiff who had personal knowledge of the parties' relationship – a sales manager and a sales representative – provided no support for plaintiff's position that defendant accumulated an outstanding debt. Both stated that they were unaware of any payment problems, pricing issues or outstanding charges while working on the account. The sales representative stated that he routinely reviewed the parties' records and any disputed invoices to ascertain that agreed-upon prices were billed and paid, that any errors he discovered were corrected, and that, to his knowledge, no debts remained outstanding when he stopped servicing the account. He understood that plaintiff's monthly statements fully reflected all outstanding charges, and was not aware that plaintiff had any other process for recording or collecting indebtedness.

Although plaintiff now contends that it never deemed the charges listed in its ledger to be resolved or intended to discharge defendant from liability for them, "[w]hether a contract has been formed does not depend on either party's subjective intent; instead, the determination must be based on 'the objective manifestations of the intent of the parties as gathered by their expressed words and deeds'" (Brighton Inv., Ltd. v Har-Zvi, 88 AD3d 1220, 1222 [2011], quoting Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 399 [1977]). Plaintiff's private ledger cannot constitute such an objective manifestation of intent, as plaintiff concealed the ledger's existence from defendant until after their relationship ended. No other evidence in the record reveals that plaintiff manifested an intent to collect additional charges after it had accepted payments and removed the charges from its monthly statements, and as defendant had no reason to believe that plaintiff had this intent, it cannot be inferred that there was any mutual assent (see Maas v Cornell Univ., 94 NY2d 87, 93-94 [1999]; Restatement [Second] of Contracts [Formation of Contracts] § 19 [b]). Moreover, the record is devoid of any evidence that plaintiff ever challenged defendant's payments on the ground that it had systematically failed to pay the agreed-upon price, nor is there any evidence that the allegedly unpaid charges listed in

plaintiff's internal ledger resulted from such failures.

Plaintiff's contentions on appeal are largely based on alleged flaws in defendant's reconciliation procedures. However, the record includes no indication that plaintiff objected to these procedures during the life of the parties' relationship. This failure to raise timely objections supports defendant's contention that both parties relied upon the reconciliation process and deemed any disputes to be resolved once that process was complete. Plaintiff's behavior in discarding the rebill packages that provided the only documentary support for its current claim that defendant should have known that the charges remained outstanding is inconsistent with its claim that it intended to collect these charges, as is its failure to inform defendant that it had any such intention until many months after the relationship ended. Further, plaintiff submitted no evidence that it ever objected to defendant's practice of paying the lesser price upon delivery and later resolving any differences. Plaintiff's conduct in accepting the practice without objection throughout the relationship is inconsistent with its current claim that it never affirmatively consented to the practice, as is its admission that the practice is standard in the industry.

In short, the uncontradicted evidence reveals that, throughout the relationship, both parties treated all pricing disputes as resolved after plaintiff accepted payment and removed the charges from its statements. Plaintiff put forward no admissible evidence giving rise to issues of fact as to whether defendant was on notice that plaintiff considered any charges to be outstanding after this process was complete, or that defendant agreed, explicitly or implicitly, that it was liable for them. Thus, defendant established as a matter of law that there was no breach of contract, and its motion for summary judgment dismissing the cause of action for breach of contract should have been granted (see Yankee Lake Preserv. Assn., Inc. v Stein, 68 AD3d 1603, 1604-1605 [2009], lv denied 15 NY3d 706 [2010]; compare Brighton Inv., Ltd. v Har-zvi, 88 AD3d at 1223).

Defendant's remaining contentions are rendered academic by this determination.

Lahtinen, J.P., Lynch and Devine, JJ., concur.


ORDERED that the order is reversed, on the law, without costs, motion granted, summary judgment awarded to defendant and complaint dismissed.


ENTER:

Robert D. Mayberger
Clerk of the Court