■ AMCAT GLOBAL, INC., Respondent, v GREATER BINGHAMTON DEVELOPMENT, LLC, Appellant. [33 NYS3d 555]—

Clark, J. Appeals (1) from an order of the Supreme Court (Reynolds Fitzgerald, J.), entered March 16, 2015 in Broome County, upon a decision of the court in favor of plaintiff, (2) from an order of said court, entered May 21, 2015 in Broome County, which granted plaintiff's motion for prejudgment interest, and (3) from the judgment entered thereon.

In December 2010, a 12-story commercial edifice, known as the Press Building in the City of Binghamton, Broome County and owned by defendant, sustained severe water damage after a nearby fire triggered the building's sprinkler system. Defendant hired plaintiff to perform remediation work on the building. Although plaintiff provided defendant with a written agreement and rate sheets, no written contract was ever executed. The parties, however, executed an authorization to perform services, which allowed plaintiff to work on the build-

---

ing and permitted defendant's insurance carrier to pay plaintiff directly with insurance proceeds for its services.

Plaintiff commenced the remediation work in December 2010 and, in January 2011, received a $350,000 advance payment from defendant's carrier. Defendant subsequently altered the arrangement with its carrier such that its endorsement would be required on any further checks issued to plaintiff. Plaintiff thereafter received two more payments for its work. In June 2011, plaintiff learned that defendant's carrier would not compensate plaintiff for any more of its services until defendant made certain payments out of its own pocket. Later that month, plaintiff removed its personnel and equipment from the building and submitted invoices for the money owed for its work. In July 2011, defendant reached a global settlement with its carrier and the latter thereafter approved plaintiff's outstanding invoices and issued a final check in the amount of $952,457.81. Defendant, however, disputed the value of plaintiff's work and refused to endorse the final check. Less that disputed amount, the total that defendant had paid to plaintiff throughout the project was $1,840,373.59.

Plaintiff commenced this action, which sounds in, among other things, breach of contract, seeking to recover the proceeds from the last check. Defendant joined issue and countersued on, among other things, the theory that the proper measure of plaintiff's recovery is in quantum meruit.[1] What began as a jury trial was later converted by stipulation into a bench trial, at the conclusion of which Supreme Court found that the parties' course of conduct established the existence of an implied-in-fact contract, which defendant breached by failing to pay plaintiff the disputed sum. In a separate decision and order, the court awarded prejudgment interest to plaintiff. A judgment was thereafter entered upon the orders of the court. Defendant appeals from the judgment, as well as the orders.

We affirm. "Where, as here, there is no written contract between the parties, a contract may be implied in fact where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct" (*Yankee Lake Preserv. Assn., Inc. v Stein*, 68 AD3d 1603, 1604 [2009] [internal quotation marks and citations omitted], *lv denied* 15 NY3d 706 [2010]; *see Jemzura v Jemzura*, 36 NY2d 496, 503-504 [1975]; *Coca-Cola Refreshments, USA, Inc. v Binghamton Giant Mkts., Inc.*, 127 AD3d 1319, 1320-1321 [2015]). Whether an implied-in-fact contract exists will often

---

1. The two actions were eventually consolidated.

depend on the credibility of the witnesses and its assessment by the trier of fact (*see Matter of Hanley*, 18 AD2d 746, 747 [1962]; 22A NY Jur 2d, Contracts § 606). When a trial court makes a factual determination following a nonjury trial, this Court's "obligation is to independently review the weight of the evidence and . . . grant the judgment warranted by the record, while according due deference to the trial [court's] factual findings particularly where . . . they rest largely upon credibility assessments" (*Deep v Boies*, 121 AD3d 1316, 1319 [2014] [internal quotation marks and citation omitted], *lv denied* 25 NY3d 903 [2015]; *see Weinberger v New York State Olympic Regional Dev. Auth.*, 133 AD3d 1006, 1007 [2015]).

There is no dispute that defendant hired plaintiff to perform remediation services on the building and that, between December 2010 and June 2011, plaintiff performed such work and billed defendant, who, in turn, accepted said services and paid over $1.8 million for the services provided. Defendant, however, contends that there was no meeting of the minds. Defendant believed that there was an agreement for plaintiff's fees to be capped at $1.8 million and complained about plaintiff's billing practices, whereas plaintiff was convinced that the agreement was open-ended and based on time and materials.

For a contract to be implied in fact, there indeed "must be proof of a meeting of the minds" (*I.G. Second Generation Partners, L.P. v Duane Reade*, 17 AD3d 206, 208 [2005]; *see DG & A Mgt. Servs., LLC v Securities Indus. Assn. Compliance & Legal Div.*, 52 AD3d 922, 923 [2008]). It has long been established that "[a] meeting of the minds may be inferred from [the parties'] acts as well as words" (*Young v United States Mtge. & Trust Co.*, 214 NY 279, 287 [1915]; *see Berlinger v Lisi*, 288 AD2d 523, 524 [2001]). " '[W]hether a contract has been formed does not depend on either party's subjective intent' " (*Coca-Cola Refreshments, USA, Inc. v Binghamton Giant Mkts., Inc.*, 127 AD3d at 1323, quoting *Brighton Inv., Ltd. v Har-Zvi*, 88 AD3d 1220, 1222 [2011]). Here, defendant failed to demonstrate the existence of an agreement capping plaintiff's fees at $1.8 million. Plaintiff's principal and project manager both testified that they advised defendant that the cost of the remediation project could be between $1 million and $3 million, depending on the actual scope of the work. In addition, a senior adjustor of defendant's carrier testified that he did not recall any discussions with defendant's representatives regard-

ing a price cap and that, if there ever was one, it would have been documented.[2]

As to the billing disputes, the record reveals that, while defendant's principals complained to plaintiff about its billing practices, they continued to accept and pay for plaintiff's services, endorsed the third check—albeit with a reservation—that brought plaintiff over the purported $1.8 million threshold and enthusiastically recommended plaintiff's services to friends. The evidence further established that the parties entered into a time-and-materials contract, although towards the end, per defendant's request, plaintiff began billing defendant on a square-footage basis. The proof also revealed that plaintiff provided defendant with rate sheets in advance of commencing work on the project and thereafter billed defendant in accordance with those rates. Defendant's carrier advised defendant that plaintiff's billing rates and practices were "more than reasonable" and "maybe a little lower than industry standard in the area." Defendant's attempts to derogate plaintiff's billing practices, use of nonlocal labor and certain equipment were refuted by plaintiff's witnesses and were met with effective cross-examination establishing that the billings were credible and reflected the work performed, that the local labor available lacked the proper certifications and that defendant was billed to the extent that equipment was actually used (*see generally CIR Elec. Constr. Corp. v Black Cr. Integrated Sys. Corp.*, 8 AD3d 999, 1000 [2004]). Although defendant produced an expert, his opinion failed to consider the nature of the parties' arrangement, his calculations were incorrect and he was unaware of the scope of plaintiff's work. Thus, Supreme Court was justified in disregarding this expert's testimony in its entirety (*see Mohen v Mooney*, 205 AD2d 670, 672 [1994]; *Rosenberg v Rosenberg*, 155 AD2d 428, 430 [1989]).

In sum, we conclude that "Supreme Court's factual findings comport with a fair and reasonable interpretation of the evidence" and, therefore, decline to disturb them (*Chase Manhattan Bank v Douglas*, 61 AD3d 1135, 1136 [2009]; *see Matter of Boice*, 226 AD2d 908, 910-911 [1996]). Defendant's remaining arguments, to the extent not specifically addressed herein, have been considered and found to be lacking in merit.

Lahtinen, J.P., Rose, Lynch and Aarons, JJ., concur. Ordered that the orders and judgment are affirmed, with costs.

---

2. Notably, defendant conceded in its written summation that it had failed to prove the $1.8 million cap at trial.